## ATTORNEY GENERAL v DIAMOND MORTGAGE COMPANY

Docket No. 66369. Argued December 1, 1981 (Calendar No. 6).—Decided December 7, 1982.

The Attorney General brought an action in *quo warranto* and under the Consumer Protection Act in the Ingham Circuit Court against Diamond Mortgage Company and Sheldon Greenberg and Barton Greenberg, its officers and directors, alleging violation of the act and the usury statutes and abuse of Diamond's corporate charter and gross misuse of its corporate privileges. The circuit court, James T. Kallman, J., dismissed the action on the grounds that an action in *quo warranto* was inappropriate because an adequate remedy existed under the real estate brokers licensing act and because violation of usury laws does not involve guilt of *ultra vires* acts per se; that because they were real estate brokers the conduct of the defendants was exempt from the Consumer Protection Act, and that the Ingham Circuit Court lacked jurisdiction. The Court of Appeals, V. J. Brennan, P.J., and Allen and Beasley, JJ., affirmed in an opinion per curiam on the ground that the plaintiff had failed to exhaust his administrative remedies (Docket No. 46114). The plaintiff appeals.

In a unanimous opinion by Justice Coleman, the Supreme Court *held:*

The plaintiff was not required to bring an action before the Department of Licensing and Regulation; the action in *quo warranto* to divest Diamond of its corporate privileges was appropriate; the defendants are not exempt from the Consumer

REFERENCES FOR POINTS IN HEADNOTES
[1] 19 Am Jur 2d, Corporations §§ 1630, 1643.
   65 Am Jur 2d, Quo Warranto § 77.
[2] 12 Am Jur 2d, Brokers § 83 *et seq.*
   54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 266.
[3] 55 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 696.
[4] 54 Am Jur 2d, Monopolies, Restrainst of Trade, and Unfair Trade Practices § 261.

Protection Act; and the Ingham Circuit Court had jurisdiction of the action.

1. The plaintiff sought the dissolution of Diamond for pervasive illegality under the usury and consumer protection laws, not the revocation of its real estate broker's license. Although divesting Diamond of its corporate privileges may produce the same result as revoking its license, the plaintiff was not required to seek revocation of the license before seeking dissolution. The relief which the plaintiff sought was not available in the Department of Licensing and Regulation.

2. The Department of Licensing and Regulation did not have primary jurisdiction in this case. The doctrine of primary jurisdiction applies where a claim originally cognizable in the courts requires resolution of issues which have been placed within the special competence of an administrative body. In this case, there is no pervasive regulatory scheme which might be thrown out of balance by initial review in the courts. The Department of Licensing and Regulation was not granted broad powers of regulation over the entire subject matter of a licensee's business. Without interfering with the responsibilities of the department, the courts can determine the obligations of real estate brokers under the consumer protection, usury, and corporation laws.

3. Diamond's real estate broker's license did not exempt its conduct from the Consumer Protection Act. The license generally authorizes Diamond to engage in the activities of a real estate broker, but does not specifically authorize the conduct allegedly violative of the act. The exemption relied upon by the defendants applies to transactions or conduct specifically authorized under laws administered by a regulatory agency.

4. The Consumer Protection Act provides that an action may be brought in the circuit court of the county in which a defendant is established or conducts business, or in the Ingham Circuit Court where a defendant is not established in Michigan. The provision does not mention jurisdiction or speak of the power to review. Rather, the language must be construed to relate to venue only. In this case, the claim under the Consumer Protection Act was joined with the action in *quo warranto,* which was properly brought in the Ingham Circuit Court. Under the Revised Judicature Act, therefore, the Ingham Circuit Court had jurisdiction over the claim.

Reversed and remanded.

102 Mich App 322; 301 NW2d 523 (1980) reversed.

1. *Quo Warranto* — Corporations — Administrative Law — Real Estate Brokers.

   The Attorney General may proceed in the circuit court in an action in *quo warranto* to dissolve a corporation which holds a real estate broker's license for pervasive illegality under the usury and consumer protection laws without first seeking revocation of the license in the Department of Licensing and Regulation (MCL 600.4521; MSA 27A.4521).

2. Courts — Administrative Law — Real Estate Brokers.

   The circuit court has jurisdiction to determine the obligations of real estate brokers under the consumer protection, usury, and corporation laws; the Department of Licensing and Regulation does not have the power under the real estate brokers licensing act to regulate the entire subject matter of a licensee's business, and initial review by the circuit court of matters outside the department's authority does not disturb the balance of the regulatory scheme (MCL 451.201 *et seq.;* MSA 19.791 *et seq.,* since replaced by MCL 339.101 *et seq.;* MSA 18.425[101] *et seq.).*

3. Consumer Protection — Real Estate Brokers.

   The Consumer Protection Act applies to a holder of a real estate broker's license where the conduct of the broker violates the act and is not specifically authorized under the real estate brokers licensing act (MCL 445.904; MSA 19.418[4], MCL 451.201 *et seq.;* MSA 19.791 *et seq.,* since replaced by MCL 339.101 *et seq.;* MSA 18.425[101] *et seq.).*

4. Consumer Protection — Courts — Joinder — Venue — Jurisdiction.

   The provision of the Consumer Protection Act which authorizes the bringing of actions in the circuit court of the county in which the defendant is established or conducts business addresses venue rather than jurisdiction, and where a claim under the act does not satisfy the venue requirement but is joined with a claim for which venue is proper, the circuit court has jurisdiction over the consumer protection claim (MCL 445.905, 600.1641; MSA 19.418[5], 27A.1641).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Frederick H. Hoffecker,* Assistant Attorney General, for the Attorney General.

*Lampert, Fried & Levitt, P.C.* (by *David M. Fried* and *Gary E. Levitt),* for defendants.

COLEMAN, J. The Attorney General brings this action in *quo warranto* and under the Michigan Consumer Protection Act against Diamond Mortgage Company and its officers and directors. The case was dismissed in the trial court, and the Court of Appeals affirmed. Several questions need to be answered. First, under the doctrines of either the exhaustion of administrative remedies or primary jurisdiction, should this action against a licensed real estate broker initially have been brought before the Department of Licensing and Regulation? Second, are the defendants exempt from the Michigan Consumer Protection Act, MCL 445.901 *et seq.;* MSA 19.418(1) *et seq.,* because of their license to engage in the real estate brokerage business? Third, is § 5(1) of the Michigan Consumer Protection Act, MCL 445.905; MSA 19.418(5), a jurisdictional, as opposed to a venue, provision? Fourth, is an action in *quo warranto* inappropriate against a corporation allegedly involved in pervasive illegality under the usury and consumer protection laws? We answer all four questions in the negative and reverse the judgments of the lower courts.

I

The Attorney General instituted this action in *quo warranto* and under the Michigan Consumer Protection Act, MCL 445.901 *et seq.;* MSA 19.418(1) *et seq.,* on June 13, 1979. Defendant Diamond Mortgage Company is a Michigan corporation, and defendants Sheldon Greenberg and Barton Greenberg are its officers and directors.

The Attorney General alleged, *inter alia,* that Diamond advertised and offered loans to homeowners. Diamond represented that the interest would be 11% per annum. At closing, a promissory note and mortgage were executed on which Diamond was the mortgagee. Also at the closing, Diamond allegedly imposed a brokerage or prepaid finance fee, the fee was taken from the loan, and the loan was increased to cover the amount of the fee. The entire amount was then owed at 11% interest per annum. This brokerage or finance fee, the Attorney General contends, is interest and is usurious, because Diamond allegedly is the lender.[1] The Attorney General also alleged that the various documents used to complete the mortgage loan transaction were confusing and inconsistent concerning such matters as whether Diamond was acting as lender or broker, what amount was to be paid to the homeowner, what amount was to be financed, and what were the amounts of the annual percentage rate and the finance charge. The Attorney General contends that Diamond's methods of doing business violated the Michigan Consumer Protection Act and the usury statutes. Diamond allegedly has abused its corporate charter and has engaged in a gross misuse of the corporate privileges given to it by the State of Michigan. As remedies, the Attorney General seeks the revocation of Diamond's corporate privileges, relief for injured homeowners through the reformation of the mortgage loan transactions, and the imposition of penalties.

The defendants raised several issues in their answer. They contended, *inter alia,* that the circuit

---

[1] Diamond denies this allegation and contends that it is in the mortgage brokerage business and merely obtains mortgages for homeowners.

court lacked jurisdiction because the Attorney General failed to exhaust his administrative remedies. The defendants asserted that he first should have sought the revocation of Diamond's real estate broker's license in a proceeding before the Department of Licensing and Regulation. See MCL 451.213; MSA 19.803.[2] They also asserted that Diamond's activities as a licensed real estate broker were exempt from the proscriptions of the Michigan Consumer Protection Act. See MCL 445.904; MSA 19.418(4).[3] Defendants further alleged that the Michigan Consumer Protection Act violates the title-object clause of the Michigan Constitution of 1963. Const 1963, art 4, § 24. Addi-

---

[2] The real estate brokers licensing act, 1919 PA 306, as amended, MCL 451.201 et seq.; MSA 19.791 et seq., was repealed and replaced by the Occupational Code, 1980 PA 299; MCL 339.101 et seq.; MSA 18.425(101) et seq., subsequent to the time the present action was commenced, June 13, 1979, and dismissed, June 20, 1979, in the trial court.

MCL 451.213; MSA 19.803 provided in part:

"The department of licensing and regulation may upon its own motion, and shall upon the verified complaint in writing of a person, investigate the actions of an applicant for a real estate salesperson license, a real estate broker or real estate salesperson, or a person who shall assume to act in either capacity within this state, and may deny, suspend, or revoke a license issued under this act and may reprimand or place on probation a licensee if the applicant or licensee, in performing or attempting to perform an act mentioned in this act is considered to be guilty of:

"(a) Making a substantial misrepresentation.

"(b) Making a false promise of a character likely to influence, persuade, or induce.

"(c) Pursuing a continued and flagrant course of misrepresentation or the making of false promises through agents or salespersons or advertising or otherwise."

[3] MCL 445.904; MSA 19.418(4) provides in part:

"(1) This act shall not apply to:

"(a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

\* \* \*

"(3) The burden of proving an exemption from this act is upon the person claiming the exemption."

tionally, they contended that the Ingham Circuit Court lacked jurisdiction over plaintiff's claim under the Michigan Consumer Protection Act because the defendants were not established or conducting business in Ingham County. See MCL 445.905(1); MSA 19.418(5)(1).[4]

The circuit judge dismissed the action, stating several reasons. First, he held that even if the defendants could be prosecuted for usury "they would not be guilty per se of *ultra vires* acts that would justify a *quo warranto* action". Second, he cited *Attorney General v Shaw,* 327 Mich 648; 42 NW2d 774 (1950), for the proposition that *quo warranto* would not be appropriate when there existed an adequate statutory remedy. He concluded that in this case the real estate brokers licensing act offered an adequate remedy. Third, he agreed with defendants that because Diamond held a real estate broker's license it was exempt from the Michigan Consumer Protection Act. Finally, he stated that even if Diamond were subject to the Michigan Consumer Protection Act, under the act there was no jurisdiction in the Ingham Circuit Court because the defendants were neither established nor conducting business in Ingham County.

[4] MCL 445.905(1); MSA 19.418(5)(1) provides:

"When the attorney general has probable cause to believe that a person has engaged, is engaging, or is about to engage in a method, act, or practice which is unlawful pursuant to section 3, and upon notice given in accordance with this section, the attorney general may bring an action in accordance with principles of equity to restrain the defendant by temporary or permanent injunction from engaging in the method, act, or practice. *The action may be brought in the circuit court of the county where the defendant is established or conducts business or, if the defendant is not established in this state, in the circuit court of Ingham county.* The court may award costs to the prevailing party. For persistent and knowing violation of section 3 the court may assess the defendant a civil penalty of not more than $25,000.00." (Emphasis added.)

The Court of Appeals affirmed on the ground that plaintiff had failed to exhaust his administrative remedies. *Attorney General v Diamond Mortgage Corp,* 102 Mich App 322; 301 NW2d 523 (1980). It concluded that although the Department of Licensing and Regulation could not provide all of the relief requested, plaintiff was yet required to exhaust the available administrative remedies. The Court stated:

"If the present lawsuit were allowed in circuit court, coming without any administrative proceedings, the cohesive administrative scheme of the Department of Licensing and Regulation and [the Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.]* specifically set forth by the Legislature could be totally avoided by claiming, in addition to remedies available through the administrative process, a remedy outside of the administrative scheme." 102 Mich App 326.

The Court noted that plaintiff had not shown that any prejudice would result through proceeding first through the administrative process.

This Court granted the application of the Attorney General for leave to appeal. 411 Mich 1003 (1981).

## II

### A

The reasoning of the Court of Appeals in holding that the doctrine of the exhaustion of administrative remedies applied was premised upon a misstatement of the relief sought by the Attorney General. The Court stated that among the remedies plaintiff sought was "a court order revoking the defendants' real estate broker's license". 102 Mich App 324. Such relief, however, was never

requested by the Attorney General. The Attorney General sought the dissolution of the corporation, the reformation of prior mortgages, and the imposition of the penalties for which provision is made in the Michigan Consumer Protection Act and the *quo warranto* statute, MCL 600.4521; MSA 27A.4521. Contrary to the Court of Appeals assertion, none of the relief which the plaintiff sought was available in the Department of Licensing and Regulation.

There is, therefore, no basis for requiring that administrative remedies in the Department of Licensing and Regulation be exhausted. There were no administrative remedies available in that agency. Although divesting Diamond of its corporate privileges and revoking Diamond's license may end in the same result, *i.e.,* the cessation of corporate activities, there is no proposition of law that would require the Attorney General to seek the revocation of a corporation's license to act as a real estate broker prior to seeking the dissolution of the corporation. The real estate brokers licensing act, as it was in effect at the time this case arose, clearly provided that a license granted pursuant to it was not intended to shield the licensee from responsibilities under the civil and criminal laws:

"This act shall not be construed to relieve a person from civil liability or criminal prosecution under the general laws of this state." MCL 451.213; MSA 19.803.

Because the Attorney General did not seek to revoke Diamond's real estate broker's license, there was no need for him to exhaust the administrative remedies available for that purpose. Defendants conceded this at oral argument, but argued

that nevertheless the Court of Appeals decision should be affirmed under the doctrine of primary jurisdiction.

## B

The doctrine of primary jurisdiction originated in the decision of the Supreme Court of the United States in *Texas & P R Co v Abilene Cotton Oil Co,* 204 US 426; 27 S Ct 350; 51 L Ed 553 (1907). In that case, a shipper sued a carrier alleging that the carrier had charged an unreasonable rate. The question was whether a state court could properly rule on the matter absent prior review of the rate by the Interstate Commerce Commission. The commission had been established by an act, the purpose of which was to assure that rates charged by carriers were uniform and reasonable. Carriers would file their rates with the commission, and the reasonableness of those rates could be challenged in proceedings before the commission. Although the act creating the commission stated that it did not abolish the common-law right to challenge such rates in court, the Supreme Court concluded that preliminary resort must be to the Interstate Commerce Commission if the purpose of obtaining uniform rates were to be effectuated.

The Supreme Court has continued to apply the doctrine,[5] and articulated its rationale as follows in *Far East Conference v United States,* 342 US 570, 574-575; 72 S Ct 492; 96 L Ed 576 (1952):

"[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts

[5] See Anno: *The Doctrine of Primary Administrative Jurisdiction as Defined and Applied by the Supreme Court,* 38 L Ed 2d 796.

after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."

Primary jurisdiction has been distinguished from the exhaustion of administrative remedies by the fact that exhaustion applies when the claim can originally be brought only before an administrative agency.

" 'Primary jurisdiction', on the other hand, applies where a claim is originally cognizable in the courts and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body". *United States v Western P R Co,* 352 US 59, 63-64; 77 S Ct 161; 1 L Ed 2d 126 (1956).

The defendants argue that there are certain factual disputes presented in this case that require initial determination in the Department of Licensing and Regulation. These disputes are whether the defendants made misrepresentations likely to influence, persuade, or induce, and whether defendants' activities constitute the actions of a real estate broker or the actions of a lender. Defendants contend that prior resort to the Department of Licensing and Regulation is necessary both to assure uniformity in the determination of these questions and to take advantage of the special expertise of the agency. Defendants assert that

many of the acts which plaintiff has alleged would have been grounds for the suspension or revocation of their license by the Department of Licensing and Regulation. MCL 451.213; MSA 19.803.

Although the primary jurisdiction doctrine has been applied to various industries and activities,[6] the real estate brokerage business is not a heavily regulated industry of the type to which the doctrine has typically been held to apply. In *United States v Radio Corp of America,* 358 US 334, 348, 350; 79 S Ct 457; 3 L Ed 2d 354 (1959), the issue was whether approval by the Federal Communications Commission of the defendants' acquisition of a television station had the effect of collateral estoppel or res judicata, because of the doctrine of primary jurisdiction, so as to preclude a later challenge to the acquisition on antitrust grounds. The Court concluded that "[w]hile the television industry is also a regulated industry, it is regulated in a very different way" from the common carriers to which the doctrine had originally been applied. "[T]here being no pervasive regulatory scheme, and no rate structures to throw out of balance, sporadic action by federal courts can work no mischief. The justification for primary jurisdiction accordingly disappears."

Similarly, in this case, there is no pervasive regulatory scheme that might be thrown out of balance by initial review in the courts. The Department of Licensing and Regulation, under MCL 451.201 *et seq.;* MSA 19.791 *et seq.,* was given responsibility to determine, under the statutory guidelines, to whom a license should be granted and whose license should be taken or suspended. The agency was not granted broad powers of regu-

---

[6] See 2 Am Jur 2d, Administrative Law, §§ 791-792; *White Lake Improvement Ass'n v City of Whitehall,* 22 Mich App 262; 177 NW2d 473 (1970).

lation over the entire subject matter of a licensee's business. Thus, without interfering with the responsibilities of the Department of Licensing and Regulation, the courts of this state can determine what the obligations of real estate brokers are under our consumer protection, usury, and corporation laws. Uniformity of action between the agency and the courts is simply not a concern because there is no need for the responsibilities of a licensee under the licensing statutes to be the same as its responsibilities under the usury or consumer protection laws.

Although defendants argue that the expertise of the agency also warrants application of the primary jurisdiction doctrine, the questions that they argue should be initially addressed by that agency are not factually complex. The questions whether the defendants made misrepresentations of significance under the Michigan Consumer Protection Act or acted as a lender for purposes of our usury laws are ones that can be competently determined in the courts that enforce those laws.

The rationales underlying the primary jurisdiction doctrine do not support its application in the present case, and we therefore hold that there was no need for prior resort to the Department of Licensing and Regulation.

### III

One of the reasons enunciated by the trial court for dismissing plaintiff's complaint was that defendants were exempt from plaintiff's claim under the Michigan Consumer Protection Act. The trial court relied on § 4(1) of that act, which provides:

"This act shall not apply to:
(a) A transaction or conduct specifically authorized

under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904; MSA 19.418(4).

The trial judge stated that

"[s]ince Diamond is under the auspices of the Michigan Department of Licensing and Regulation, as authorized by the Michigan real estate brokers licensing act, it is apparent that Diamond is not subject to sanctions under the [Michigan Consumer Protection Act]."

Defendants contend that this ruling was correct. They assert that because Diamond had a real estate broker's license, Diamond was "entitled to perform all the acts of a real estate broker contemplated by [the real estate brokers licensing act]". MCL 451.211(b); MSA 19.801.[7] One of the activities contemplated by the act was that licensees would negotiate the "mortgage of real estate". MCL 451.202; MSA 19.792.[8]

The plaintiff, however, argues that § 4(1) of the Michigan Consumer Protection Act exempts only "[a] transaction or conduct *specifically authorized*". He contends that a license to engage in an activity is not a basis for concluding that one is "specifically authorized" to employ deceptive practices in that activity. He states:

"If every person or business which engages in an activity authorized by some statute or regulation were exempt from the Michigan Consumer Protection Act, pursuant to § 4(1), then the Michigan Consumer Protection Act, would be a cruel hoax on the many legislators * * * and others who sought to give Michigan consumers protection in the marketplace. A consumer could sue an unlicensed optician for deception, but not a

[7] Since repealed. See MCL 339.101 *et seq.;* MSA 18.425(101) *et seq.*

[8] Since repealed. See MCL 339.101 *et seq.;* MSA 18.425(101) *et seq.*

licensed optometrist. A consumer could sue a grocery store, but not a licensed car dealer or auto repair facility. A licensed hearing-aid dealer would be exempt from suit, but not the corner baker."

Defendants respond that to accept plaintiff's construction of § 4(1) would be to render the exemption meaningless. They assert:

"Obviously, there is no statute which specifically authorizes misrepresentations or false promises. Yet under plaintiff's rationale, it is only where a statute which is administered by a regulatory agency specifically authorizes unscrupulous conduct that the statutory exemption would apply."

Defendants argue that such a result is absurd.

We agree with the plaintiff that Diamond's real estate broker's license does not exempt it from the Michigan Consumer Protection Act. While the license generally authorizes Diamond to engage in the activities of a real estate broker, it does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct. In so concluding, we disagree that the exemption of § 4(1) becomes meaningless. While defendants are correct in stating that no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States". For this case, we need only decide that a real estate broker's license is not specific authority for all the conduct and transactions of the licensee's business.

## IV

The trial court also concluded that it lacked jurisdiction under the Michigan Consumer Protection Act. This conclusion was based on § 5(1) of the act, which relates to actions brought by the Attorney General and provides in pertinent part:

"The action may be brought in the circuit court of the county where the defendant is established or conducts business or, if the defendant is not established in this state, in the circuit court of Ingham county." MCL 445.905(1); MSA 19.418(5)(1).

The court held that because Diamond is established in Oakland County, the Ingham Circuit Court would lack jurisdiction of plaintiff's claim under the Michigan Consumer Protection Act.

Plaintiff contends, however, that the quoted provision is not jurisdictional, but at most relates to venue. If so, then venue could lie in Ingham County because the claim under the Michigan Consumer Protection Act was joined with a *quo warranto* claim, which properly was brought in Ingham County. MCL 600.1631; MSA 27A.1631.[9] "Where causes of action are joined, whether properly or not, the venue may be laid in any county in which either cause of action, if sued upon separately, could have been commenced and tried". MCL 600.1641; MSA 27A.1641. Defendants agree that if MCL 445.905; MSA 19.418(5) is a venue provision, this action was properly commenced in the Ingham Circuit Court.

[9] MCL 600.1631; MSA 27A.1631 provides in part:

"The county in which the seat of state government is located is a proper county in which to commence and try the following actions:

"(a) when the action is commenced by the attorney general in the name of the state or of the people of the state for the use and benefit thereof".

Neither the statutory language nor its context indicate that the Legislature was addressing jurisdiction, as opposed to venue, when it provided that actions under the Michigan Consumer Protection Act "may be brought in the circuit court of the county where defendant is established or conducts business". MCL 445.905; MSA 19.418(5). Significantly absent from the statute is any mention of jurisdiction or of the "power to review". See *Brown v LTV Aerospace Corp,* 394 Mich 702; 232 NW2d 656 (1975); *Peplinski v Employment Security Comm,* 359 Mich 665; 103 NW2d 454 (1960). Given our constitutional provision that "[t]he circuit court shall have original jurisdiction in all matters not prohibited by law", Const 1963, art 6, § 13, we must presume that the circuit courts of our state have jurisdiction, unless there is some basis for concluding that the legislative intent was otherwise. Because the statutory language of MCL 445.905(1); MSA 19.418(5)(1) can easily be read to relate to venue, and there is no ground to believe jurisdiction was being addressed, the statutory language must be construed to relate to venue.

Therefore, plaintiff's claim under the Michigan Consumer Protection Act, being joined with the action in *quo warranto* was properly brought in the Ingham Circuit Court.

## V

The circuit judge also concluded that the plaintiff's action in *quo warranto* would not lie. He stated:

"*Quo warranto* actions are traditionally brought against licensees for an ouster of their franchise for acting outside the scope of their authority. Diamond is a corporation authorized to 'engage in any activity

within the purposes for which corporations may be organized under the Business Corporation Act of Michigan'. This broad statement of purposes would allow Diamond great latitude in the conduct of its business. Theoretically it could loan money for mortgages if it met certain criteria. Even though Diamond could be prosecuted for usury, it would not be guilty per se of *ultra vires* acts that would justify a *quo warranto* action.

"Another ground for denying a *quo warranto* procedure can be found in *Attorney General v Shaw,* 327 Mich 648; 42 NW2d 774 (1950). In that case, the Supreme Court denied *quo warranto* when an applicable statute furnished a remedy. Here the real estate brokers licensing act offers adequate relief for violations such as those alleged; therefore *quo warranto* does not lie."

We do not agree that the holding of *Attorney General v Shaw* is applicable to this case. In *Shaw,* plaintiff claimed that *"quo warranto* lies to test the validity of defendant's license to engage in the used-car business, urging that he should be ousted from the privileges afforded by such license because he violated § 14 of the motor vehicle title law". 327 Mich 649. This Court concluded that *quo warranto* would not lie because

"[s]ection 14 of the motor vehicle title act itself makes no provision for such relief, but, on the contrary, provides that violations of the requirements of the section shall constitute misdemeanors, punishable as such, *and it authorizes revocation of licenses thereunder by the secretary of State for good cause shown".* 327 Mich 650. (Emphasis added.)

Hence, in *Shaw,* the Attorney General sought to use an action in *quo warranto* to oust a licensed car dealer from his privileges under the license on the basis of the violation of a statute that had an

express provision authorizing revocation of the license by the Secretary of State. The present case is distinguishable because the Attorney General is not seeking the revocation of Diamond's real estate broker's license, and neither the Michigan Consumer Protection Act nor the usury statutes specify license revocation as a remedy. Therefore, *Shaw* does not support the conclusion that because the Attorney General could have proceeded under the real estate brokers licensing act, he was precluded from bringing an action in *quo warranto* in which he would seek to oust the corporation from its corporate privileges.

This case is more similar to the companion case of *Shaw, Attorney General v Contract Purchase Corp,* 327 Mich 636; 42 NW2d 768 (1950), than it is to *Shaw.* In *Contract Purchase Corp,* the Attorney General brought an action in *quo warranto,* seeking to oust the corporation from its corporate privileges. The action was premised on alleged violations of the usury laws, the small loan act, and the Insurance Code. The Court stated:

> "*Quo warranto* is an appropriate proceeding to remedy the usurpation of corporate franchises and the abuse, misuse or nonuse of franchises or powers by an existing corporation. * * * A finding that the violations charged are established by the evidence may result in rendition of a judgment ousting and altogether excluding the corporation from its corporate rights, privileges and franchise; or in lieu thereof, this Court may impose a fine not exceeding $10,000 * * *; or the ouster, instead of being general, may be from doing particular acts. * * * *We must determine whether the testimony establishes offenses against the laws and policy of this State.*" 327 Mich 642. (Citations omitted; emphasis added.)

The Court concluded that the evidence did not

show that the usury laws, the small loan act, or the Insurance Code had been violated. However, the Court did accept the proposition that the violation of such laws might warrant relief in an action in *quo warranto.*

In this case, the plaintiff has alleged that Diamond as a regular practice, violated the usury and consumer protection laws of this state. Because the Attorney General seeks to oust Diamond from its corporate privileges on the basis of this illegal activity, the case is similar to that presented in *Contract Purchase Corp.* As in *Contract Purchase Corp,* we find that a factual inquiry is appropriate concerning the extent to which Diamond has violated the laws and policies of this state. We conclude that the plaintiff should be allowed the opportunity to prove his allegations. If the evidence presented by the plaintiff does not justify dissolution of the corporation, other more limited remedies are available. MCL 600.4521; MSA 27A.4521.[10]

## VI

Defendants challenge the constitutionality of the Michigan Consumer Protection Act on the ground that it violates the title-object provision of the 1963 Michigan Constitution, art 4, § 24. Because this case is to be remanded to the circuit court,

---

[10] MCL 600.4521; MSA 27A.4521 provides:

"If a corporation has, by any misuser, nonuser, or surrender, forfeited its corporate rights, privileges and franchises, the judgment in an action for quo warranto shall oust and exclude such corporation from such corporate rights, privileges and franchises, and may dissolve the corporation. In addition to such judgment or in lieu thereof (except in case of such surrender), the court may impose a fine not exceeding $10,000.00 upon the corporation. The fine will not prevent further prosecution for any continuance or repetition of the conduct complained of."

there is no need for this Court to address the issue at this stage in these proceedings.

The judgments of the Court of Appeals and the circuit court are reversed, and we remand this case to the Ingham Circuit Court for proceedings consistent with this opinion.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, LEVIN, and RYAN, JJ., concurred with COLEMAN, J.

The late Justice BLAIR MOODY, JR., took no part in the decision of this case.