KELLY, J.
(dissenting). Plaintiffs Arthur and Beverly Liss sued defendants Lewiston-Richards, Inc., and Jason Lewiston, asserting a cause of action under the Michigan Consumer Protection Act (MCPA), MCL 445.901 et seq. As the basis of their claim, plaintiffs accused defendants of behavior that is arguably prohibited by the Michigan Occupational Code. MCL 339.101 et seq.
A majority of this Court finds that the behavior at issue is exempt from the MCPA because it is specifically authorized by the code. In reaching this result, the majority extends the holding of Smith v Globe Life Ins Co[1] to the residential home building industry. Because I believe that the behavior at issue is not exempt from the MCPA and that the holding of Smith should be limited strictly to cases involving the insurance industry, I dissent.
FACTS
Plaintiffs, Arthur and Beverly Liss, purchased a house that was being built by defendant LewistonRichards, Inc. Construction was in progress when plaintiffs signed the agreement of sale. It contained provisions regarding the construction of a residential dwelling, Lewiston-Richards’s experience and qualifications, and Lewiston-Richards’s financing agreements. Lewiston-Richards’s principal, defendant Jason Lewiston, signed a personal guaranty in connection with the agreement. Lewiston guaranteed that *218 Lewiston-Richards would perform its obligations under the agreement, including those in the limited warranty. He further agreed that he would assume personal liability if a default occurred that Lewiston-Richards failed to cure.
The home was not completed by the agreed-upon date, and the work was not to plaintiffs’ satisfaction. Plaintiffs filed suit claiming that the defendants engaged in unfair trade practices in violation of the MCPA. They alleged that defendants (1) misrepresented the characteristics, uses, and benefits of the residence; (2) misrepresented the standard, quality, and grade of the residence; (3) failed to complete the construction of the residence; and (4) made material misrepresentations or failed to advise of material information with respect to the transaction reflected in the agreement.
Defendants moved for summary disposition of the MCPA claim, asserting that the transaction, the building of a residential home, was exempt from the scope of the MCPA. The trial court denied the motion. Defendants then filed an application for leave to appeal in the Court of Appeals and an application for leave to appeal in this Court before a decision by the Court of Appeals. This Court granted defendants’ application. 474 Mich 1133 (2006).
THE HOLDINGS IN SMITH AND DIAMOND MORTGAGE ARE IN CONFLICT
The majority’s decision that MCL 445.904(1)(a) exempts licensed residential builders from liability under the MCPA when they are engaged in residential home building is erroneous for two reasons. First, it extends Smith to residential home builders. Smith should be strictly limited to the insurance industry. Second, even *219 under Smith, the conduct at issue is not exempt from the MCPA because the law does not specifically authorize residential home builders to engage in residential home building.
The key part of the MCPA involved here is the exemption provision, MCL 445.904(1)(a). It provides:
(1) This act does not apply to either of the following:
(a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.
The burden of proving the exemption is on the person claiming it. MCL 445.904(4).
This Court first interpreted the exemption provision in Attorney General v Diamond Mortgage Co, 414 Mich 603; 327 NW2d 805 (1982). Diamond Mortgage decided that real estate brokers are not exempt from liability under the MCPA even though their conduct is subject to regulation by the Michigan Department of Licensing and Regulation. Id. at 615-617. In holding that real estate brokers are subject to the MCPA, this Court reasoned:
We agree with the plaintiff that Diamond’s real estate broker’s license does not exempt it from the Michigan Consumer Protection Act. While the license generally authorizes Diamond to engage in the activities of a real estate broker, it does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct. In so concluding, we disagree that the exemption of § 4(1) becomes meaningless. While defendants are correct in stating that no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to “[a] transaction or conduct specifically authorized under laws administered by a regulatory *220 board or officer acting under statutory authority of this state or the United States.” [Id. at 617.]
Diamond Mortgage’s interpretation of § 4(1)(a) was very narrow and followed the plain meaning of the words of the statute: “[a] transaction or conduct specifically authorized.” Under Diamond Mortgage, only a transaction or conduct that is specifically authorized by a statute can be exempt from the MCPA.
This Court considered the exemption again in Smith. Without explanation, the majority in Smith concluded that, in drafting § 4(1)(a), the Legislature intended to exempt “conduct the legality of which is in dispute.” Smith, 460 Mich at 465. The Smith majority went on to create a new test for determining exemptions under § 4(1)(a). It is whether the “general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.” Smith, 460 Mich at 465. Under this new test, the Court concluded that the entire insurance industry is exempt from the MCPA under § 4(1)(a).
It is apparent to me that the decisions in Diamond Mortgage and Smith cannot be squared. Diamond Mortgage asked whether the transaction or conduct alleged to be in violation of the MCPA is “specifically authorized” by another statute, and it created a narrow exception. Diamond Mortgage, 414 Mich at 617. Smith asked whether the general transactions of the industry are “specifically authorized,” and it created a broad exemption exempting the entire insurance industry. Smith, 460 Mich at 465. Because the two interpretations are inconsistent, this Court should determine which was intended by the Legislature.[2]
*221 SMITH SHOULD BE LIMITED TO THE INSURANCE INDUSTRY
When interpreting any statutory provision, a court should begin with an examination of the statutory language. MCL 445.904(1)(a) provides that the exemption applies to “[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.” By the statute’s terms, the exemption applies to “[a] transaction.” This statutory language is in the singular. It follows that the proper inquiry is whether the singular transaction or conduct at issue is specifically authorized by law.
However, instead of exempting a singular transaction or conduct, the Smith test classifies the transaction in question in broad terms and exempts all the transactions of the entire industry. Smith, 460 Mich at 465. On the other hand, Diamond Mortgage considers the discrete transaction or conduct at issue and concludes that the exemption applies only if that transaction or conduct is specifically authorized by law. Diamond Mortgage, 414 Mich at 617. Accordingly, solely on the basis of the common meaning of the language of the exemption, Diamond Mortgage offers the more accurate interpretation.
Smith is inconsistent with the language of the statute in another regard. It permits illegal behavior to be exempt from the MCPA. In this case, plaintiffs accuse defendants of behavior that is illegal under the Michi *222 gan Occupational Code.[3] Yet under Smith, even if plaintiffs’ allegations are true, defendants would be exempt from liability under the MCPA. This is an illogical result. The statute provides that there is an exemption for “[a] transaction or conduct specifically authorized under laws ....” MCL 445.904(1)(a). A transaction or conduct that is actually prohibited by law cannot be deemed to be specifically authorized.[4] 4
By contrast, Diamond Mortgage's narrow reading of the exemption is harmonious with the language of the *223 exemption and also furthers the purpose of the MCPA. In the 1970s, the MCPA was the crown jewel of an aggressive legislative effort to expand consumers’ rights and remedies.[5] It “was enacted to provide an enlarged remedy for consumers who are mulcted by deceptive business practices . . . .” Dix v American Bankers Life Assurance Co, 429 Mich 410, 417; 415 NW2d 206 (1987). The Legislature created this enlarged remedy by making the MCPA applicable to “trade or commerce”[6] and by defining “trade or commerce” to include virtually all consumer transactions.[7]
In order to accomplish the goal of “providing] an enlarged remedy for consumers,”[8] courts should construe the act’s exemption narrowly. Smith v Employment Security Comm, 410 Mich 231, 278; 301 NW2d 285 (1981) (MOODY, J., dissenting). Though no Michigan court has previously explored the purpose of the exemption in § 4(a)(1), courts in numerous other jurisdictions have considered the purpose of similar provisions. *224 These decisions are helpful in understanding the purpose and scope of our exemption.
In Skinner v Steele,[9] 10the Tennessee Court of Appeals was called upon to determine the scope of a similarly worded exemption to the Tennessee consumer protection act (TCPA). Id. at 337. The exemption provided:
The provisions of this chapter shall not apply to: (a) Acts or transactions required or specifically authorized under the laws administered by or rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United States. [TCA § 47-18-111.]
The defendant argued that this provision exempted the entire insurance industry from the TCPA. Skinner, 730 SW2d at 337. In deciding that the insurance industry was not exempt, the court noted:
The purpose of the exemption is to insure that a business is not subjected to a lawsuit under the Act when it does something required by law, or does something that would otherwise be a violation of the Act, but which is allowed under other statutes or regulations. It is intended to avoid conflict between laws, not to exclude from the Act’s coverage every activity that is authorized or regulated by another statute or agency. Virtually every activity is regulated to some degree. [Id. at 337.][10] *225 a court must be convinced that “a direct and unavoidable conflict exists between the application of the [CSPA] and application of the other regulatory scheme or schemes. It must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes.” [Elder v Fischer, 129 Ohio App 3d 209, 219; 717 NE2d 730 (1998), quoting Lemelledo v Beneficial Mgt Corp of America, 150 NJ 255, 270; 696 A2d 546 (1997) (interpreting the New Jersey consumer fraud act).][11]
*224 Similarly, in considering whether regulated industries were exempt from the Ohio consumer sales practices act (CSPA), the Ohio Court of Appeals has stated that, in order to overcome the presumption that the CSPA applies,
*225 Another source that sheds light on the purpose of the exemption is the recent article written by Assistant Attorney General Edwin Bladen. The MCPA was authored in large part by Mr. Bladen and, in the article How and why the Consumer Protection Act came to be, he discusses at length the history and intent of the act.[12] Mr. Bladen states that the MCPA exemptions were intended to be given a limited interpretation. Id. at 12. Specifically, he says that the intent was to “look to see, not whether the entity is subject to the act, but whether the method, act or practice alleged to violate the act is indeed one addressed and prohibited by the act. To the extent Smith v. Globe Life Insurance. . . arrived at a different view, it is clearly erroneous . ...” Id.
From these sources, it emerges that the Legislature included the exemption out of concern that the MCPA, *226 because of its breadth, might prohibit a transaction or conduct that another act authorizes. A merchant could be put on the horns of a dilemma if the same transaction were specifically authorized by one statute and prohibited by the MCPA. Section 4(1)(a) was designed to avoid that conflict. The Diamond Mortgage holding is in harmony with the purpose of § 4(1) because it applies the exemption only when there is a direct and unavoidable conflict between the MCPA and another law.[13]
Given the language and purpose of the MCPA, I believe that this Court interpreted the exemption correctly in Diamond Mortgage and incorrectly in Smith. Even so, because I do not think the compelling interests necessary to overrule a prior decision of this Court are present, I do not advocate overruling Smith. Instead, I would limit the holding of Smith to the insurance industry.
The Smith Court itself indicated that its opinion has limited application by explicitly stating that it did not address other consumer transactions not before the Court and warning that “insurance companies are not ‘[l]ike most businesses.’ ” Smith, 460 Mich at 465-466 n *227 12 (citation omitted).[14] Aside from matters involving the insurance industry, I would apply the standard articulated in Diamond Mortgage. I would hold that the focus of the § 4(1)(a) inquiry is whether the discrete transaction alleged to be in violation of the MCPA is specifically authorized by some other law.
If the test set forth in Diamond Mortgage were applied to the facts of this case, the exemption would not apply. Here, plaintiffs allege that defendants misrepresented their experience and qualifications and misrepresented the financing of the construction mortgage. Defendants have failed to point to any authority for the proposition that either of these transactions is “specifically authorized” by law.
Plaintiffs also allege that defendants (1) misrepresented the characteristics, uses, and benefits of the residence; (2) misrepresented the standard, quality, and grade of the residence; (3) failed to complete the construction of the residence; and (4) made material mis *228 representations or failed to advise of material information with respect to the transaction reflected in the agreement. These transactions, rather than being authorized, are arguably specifically prohibited by law. See MCL 339.2411(2)(d),(m). Accordingly, because defendants were not specifically authorized to perform the discrete transactions at issue, the exemption does not apply.
EVEN UNDER SMITH, THE EXEMPTION DOES NOT APPLY HERE BECAUSE THE TRANSACTION OR CONDUCT AT ISSUE IS NOT SPECIFICALLY AUTHORIZED BY LAW
In Smith, this Court interpreted the § 4(1)(a) exemption to apply if the “general transaction is specifically authorized by law.. . .” Smith, 460 Mich at 465. As I explained earlier, Smith should not be extended beyond the facts of that case. However, even under the test in Smith, the exemption should not apply here because there is no law specifically authorizing the general transaction or conduct at issue.
The determinative issue under the Smith test is whether the general conduct or transaction is specifically authorized by law. Accordingly, in order to apply this test, it is first necessary to give meaning to the phrase “specifically authorized.” In so doing, it is appropriate to consider dictionary definitions. Koontz v Ameritech Services, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002). “Specific” is defined as “having a special application, bearing, or reference; explicit or definite.” Random House Webster’s College Dictionary (2001). “Authorize” means “to give authority or official power to; empower.”[15] Id. Hence, for the general transaction or *229 conduct to be “specifically authorized,” there must be a law that explicitly gives the power to perform the general transaction or conduct at issue.
The provisions of the Michigan Occupational Code that apply to residential home builders[16] are devoid of any specific authorizations of transactions or conduct. There are broad definitions of “residential builder” and other positions.[17] MCL 339.2401. There are exemptions from licensure. MCL 339.2403. Minimum licensing qualifications are set forth. MCL 339.2404. Contributions to the Homeowner Construction Lien Recovery Fund[18] are made mandatory. MCL 339.2409.
Perhaps the most significant provision is MCL 339.2411, which lays out in detail the conduct of a licensee that will result in discipline and the procedures applicable to certain complaints. The most that can be said of this provision, however, is that it defines prohibited conduct. Nothing in any of these provisions explicitly gives residential home builders the power to engage in residential home building. Because there is no law that specifically authorizes residential home builders to *230 engage in any activity, let alone residential home building, defendants cannot claim the protection of the exemption.
By erroneously finding that residential home builders are exempt from the MCPA, the majority essentially reads the phrase “specifically authorized” out of the statute. Rather than requiring specific authorization, the majority concludes that the exemption applies as long as the transaction or conduct is not prohibited. Yet, the majority is aware that every word in a statute should be given meaning, and the Court should avoid a construction that would render any part surplusage or nugatory. Wickens v Oakwood Healthcare Sys, 465 Mich 53, 60; 631 NW2d 686 (2001). By ruling as it does, the majority has essentially decided that merely being a licensee in a regulated industry qualifies one for the exemption. Nothing indicates that the Legislature intended such a result.
CONCLUSION
This case addresses the scope of the exemption in MCL 445.904(1)(a). The majority finds that the exemption extends to builders when engaged in residential home building. Essentially, it decides that the exemption applies to any business that has a licensing scheme similar to that used by residential home builders. The result may well be that a large number of Michigan businesses will be able to engage in unfair or deceptive practices without running afoul of the MCPA. For this reason, and for the other reasons set forth in this opinion, I must dissent.

 460 Mich 446; 597 NW2d 28 (1999).

 The majority claims that Smith and Diamond Mortgage are consistent because in Diamond Mortgage the defendants had “no statutory authorization to engage in mortgage writing.” Ante at 210 n 23. This is *221 irrelevant because Diamond Mortgage did not turn on whether the broker’s license of the defendants allowed them to engage in mortgage writing. The decision turned on whether a statute specifically authorized the conduct at issue. The result in Diamond Mortgage would have been the same regardless of whether the broker’s license allowed the defendants to engage in mortgage writing. The reason is that no statute specifically authorized the conduct that the plaintiffs alleged was in violation of the MCPA.

 MCL 339.2411(2) provides, in part:
A licensee or applicant who commits 1 or more of the following shall be subject to the penalties set forth in article 6:
(d) A willful departure from or disregard of plans or specifications in a material respect and prejudicial to another, without consent of the owner or an authorized representative and without the consent of the person entitled to have the particular construction project or operation completed in accordance with the plans and specifications.
(m) Poor workmanship or workmanship not meeting the standards of the custom or trade verified by a building code enforcement official.
Because plaintiffs allege that defendants (1) misrepresented the characteristics, uses, and benefits of the residence; (2) misrepresented the standard, quality, and grade of the residence; (3) failed to complete the construction of the residence; and (4) made material misrepresentations or failed to advise of material information with respect to the transaction reflected in the agreement, defendants’ behavior arguably violates these provisions.

 Accepting plaintiffs’ allegations as true, the majority has decided that defendants are exempt from the MCPA even though they broke the law. I cannot accept that the Legislature intended to exempt illegal conduct from an act that protects consumers from illegal conduct.

 In addition to the MCPA, the Legislature enacted the landlord-tenants relationships act, MCL 554.601 et seq.; the Motor Vehicle Service and Repair Act, MCL 257.1301 et seq.; the Truth in Renting Act, MCL 554.631 et seq.; and the pricing and advertising act, MCL 445.351 et seq. In fact, during this period, similar “laws of broad applicability [were] enacted in every state and the District of Columbia prohibiting unfair or deceptive acts and practices and unfair competition in the marketplace.” Anno, Right to private action under state consumer protection act— Equitable relief available, 115 ALR5th 709, § 2, pp 725-726.

 See MCL 445.903(1).

 MCL 445.902(1)(g) provides, in part:
“Trade or commerce” means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity.

 Dix, 429 Mich at 417.

 730 SW2d 335 (Tenn App, 1987).

10 In interpreting similar provisions, the supreme courts of both South Carolina and Colorado have quoted Skinner in discussing the purpose of their respective exemptions. Ward v Dick Dyer & Assoc, Inc, 304 SC 152, 156; 403 SE2d 310 (1991); Showpiece Homes Corp v Assurance Co of America, 38 P3d 47, 56 (Colo, 2001).

11 The decisions I have discussed are illustrative of how other courts have interpreted similar exemptions but are by no means an exhaustive review of the laws of sister states. There are many other similar decisions that I have not discussed. See, e.g., Vogt v Seattle-First Nat’l Bank, 117 Wash 2d 541; 817 P2d 1364 (1991); Bober v Glaxo Wellcome PLC, 246 F3d 934 (CA 7, 2001).

 Bladen, How and why the Consumer Protection Act came to be, <http://www.michbar.org/consumer/pdfs/HowWhy.pdf> (accessed May 16, 2007).

 One example of a direct and unavoidable conflict can be found in the Motor Vehicle Service and Repair Act (MVSRA), MCL 257.1301 et seq. The MVSRA establishes an extensive regulatory scheme for motor vehicle repair facilities. The written estimate section of the MVSRA specifically authorizes motor vehicle repair facilities to charge “10 % or $10.00, whichever is lesser” over a written estimate without obtaining “the written or oral consent of the customer . . . .” MCL 257.1332(1). Charging any amount above a written estimate without obtaining the consent of the consumer arguably could violate several subsections of the MCPA. See, e.g., MCL 445.903(1)(n), (s), (bb), and (cc). Because charging this amount in excess of a written estimate is “specifically authorized” under the MVSRA, however, motor vehicle repair facilities that impose the charge are exempt from suit under the MCPA.

 There is extraordinary oversight of each credit insurance transaction. The Insurance Code “manifests an intent to regulate the entire insurance and surety business field, and not to leave any portion of it unregulated.” 19 Michigan Law & Practice, Insurance, § 1, p 13. Credit insurance transactions are regulated by the Credit Insurance Act, MCL 550.602 through 550.624, and 21 rules in the Administrative Code, containing more than 130 subsections. 1999 AC, R 550.201 through R 550.221. Virtually every document used to arrange and sell credit insurance must be submitted for review by the Commissioner of Insurance before being used to sell insurance to consumers. 1999 AC, R 550.209(2). The commissioner also has authority over all rates and premiums charged in credit insurance transactions. Rates are set by rule; credit life insurance rates must conform to 1999 AC, R 550.211, credit accident and health insurance rates must conform to 1999 AC, R 550.212. This comprehensive regulation of each insurance transaction highlights that, indeed, insurance companies are not like most businesses. And, because insurance transactions require a degree and type of statutory authorization equaled by few, if any, other consumer industries, it is logical to limit Smith’s holding to this industry.

 Notably, I use Random House Webster’s College Dictionary’s first definition of the word “authorize” while the majority opinion uses the second definition of the word. The majority claims that it uses the second *229 definition because it focuses on the action and not the actor. This is not true. The majority focuses exclusively on the actor because, under the majority’s interpretation, simply being a residential home builder makes defendants exempt from the MCPA.

 MCL 339.2401 through 339.2412.

 The majority relies on the code’s definition of “residential builder” to find specific authorization for the conduct at issue. I take strong exception to this approach. This definition implicitly allows residential home builders to construct homes, but it does not specifically authorize them to do so. The majority also makes much of the fact that there are only a few instances where one can engage in residential home building without a license. Again, the fact that the law may prohibit nonlicensees from building a home does not amount to specific authorization for residential builders to engage in residential home building.

 MCL 570.1201.