Michigan Supreme Court
Lansing, Michigan

# Opinion

Chief Justice:            Justices:
Clifford W. Taylor        Michael F. Cavanagh
                          Elizabeth A. Weaver
                          Marilyn Kelly
                          Maura D. Corrigan
                          Robert P. Young, Jr.
                          Stephen J. Markman

FILED JUNE 6, 2007

ARTHUR Y. LISS and BEVERLY LISS,

 Plaintiffs-Appellees,

v              No. 130064

LEWISTON-RICHARDS, INC., and JASON P. LEWISTON,

 Defendants-Appellants.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

The issue presented in this case is the proper scope of the exemption for regulated conduct and transactions under the Michigan Consumer Protection Act (MCPA).[1] The MCPA exempts any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."[2] In *Smith v Globe Life Ins*

---

[1] MCL 445.901 *et seq*.

[2] MCL 445.904(1)(a).

*Co*,[3] this Court held that the relevant inquiry "is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." In *Hartman & Eichhorn Bldg Co, Inc v Dailey*,[4] the Court of Appeals opined that under the *Smith* test, licensed residential home builders were exempt from the MCPA; however, the Court ruled against the residential home builders because it believed that it was bound by *Forton v Laszar*[5] to hold that the residential home builders were subject to the MCPA. We hold that under MCL 445.904(1)(a), residential home builders are exempt from the MCPA because the general transaction of residential home building, including contracting to perform such transaction, is "specifically authorized" by the Michigan Occupational Code (MOC), MCL 339.101 *et seq*. Therefore, we overrule any holding to the contrary in *Forton* and *Hartman*.

## FACTS AND PROCEDURAL HISTORY

In December 2000, plaintiffs, Arthur and Beverly Liss (Lisses) and defendant Lewiston-Richards, Inc. (Lewiston-Richards), entered into a contract for the sale and completion of construction of a residential home. Defendant Jason Lewiston (Lewiston), President of Lewiston-Richards, executed the contract on Lewiston-Richards's behalf. The Lisses allege that Lewiston-Richards did not

---

[3] 460 Mich 446, 465; 597 NW2d 28 (1999).

[4] 266 Mich App 545; 701 NW2d 749 (2005).

[5] 239 Mich App 711; 609 NW2d 850 (2000).

2

complete construction on time and that the construction that was completed was not done in a workman-like manner. In 2003, the Lisses filed this action alleging breach of contract, breach of warranty, and other causes of action.[6] Pertinent to this appeal, the Lisses allege that defendants violated the MCPA. Through their counterclaim and answer, defendants asserted that the transaction at issue, residential home building, was exempt from the MCPA. The parties filed cross-motions for summary disposition. The trial court denied defendants' motion for summary disposition of the MCPA claim. The court held that it was bound to follow *Hartman* and hold that defendants were subject to the MCPA. Defendants filed an application in the Court of Appeals for leave to appeal from the order denying their motion and an application in this Court for leave to appeal before a decision by the Court of Appeals. This Court granted defendants' bypass application.[7]

## STANDARD OF REVIEW

This Court reviews questions of statutory interpretation de novo.[8] When interpreting a statute, this Court attempts to give effect to the Legislature's intent

---

[6] The Lisses also filed a complaint with the Department of Labor and Economic Growth, Bureau of Commercial Services Enforcement Division. This entity within the Department of Labor and Economic Growth investigates and resolves consumer complaints against residential home builders.

[7] 474 Mich 1133 (2006).

[8] *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006).

3

by looking at the statutory text, giving meaning to every word, phrase, and clause in the statute and considering both their plain meaning and their context.[9] This Court also reviews a trial court's decision granting or denying a motion for summary disposition de novo.[10]

ANALYSIS

Under the MCPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful . . . ."[11] However, the Legislature included an exemption in MCPA § 4(1)(a) that, relevant to this case, exempts any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."[12] The party claiming the exemption bears the burden of proving its applicability.[13]

---

[9] *Shinholster v Annapolis Hosp*, 471 Mich 540, 548; 685 NW2d 275 (2004).

[10] *City of Taylor*, *supra* at 115.

[11] MCL 445.903(1).

[12] MCL 445.904(1)(a).

[13] MCL 445.904(4). Thus, § 4(1)(a) provides an affirmative defense, which is waived, unless the party raised it in the party's first responsive pleading, as originally filed or as amended under MCR 2.118, or motion for summary disposition. MCR 2.111(F)(3); see *Rasheed v Chrysler Corp*, 445 Mich 109, 131-132; 517 NW2d 19 (1994). Defendants properly raised the exemption in their answer and counterclaim, as well as in their motion for summary disposition.

This Court first construed the scope of this particular exemption in *Attorney General v Diamond Mortgage Co.*[14] In *Diamond Mortgage*, the defendant was a licensed real estate broker who advertised and offered loans to homeowners. The Attorney General brought suit alleging violations of the MCPA. The defendant answered, contending that because it was a licensed real estate broker, its activities were exempt under § 4(1)(a) of the MCPA. This Court disagreed, holding that the defendant's "real estate broker's license does not exempt it from the Michigan Consumer Protection Act."[15] The broker's license authorized the defendant "to engage in the activities of a real estate broker," but it did not "specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct."[16] Ultimately, this Court held that while, "no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to '[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.'"[17] Because "a real estate

---

[14] 414 Mich 603; 327 NW2d 805 (1982).

[15] *Diamond Mortgage, supra* at 617.

[16] *Id.*

[17] *Id.* Plaintiff and the dissents contend that an illegal act can never be "specifically authorized" and thus exempt. In focusing on the alleged illegality

(continued…)

5

broker's license is not specific authority for all the conduct and transactions of the [defendant's mortgage writing] business," the defendant's conduct and transactions were not exempt.[18]

This Court again considered the application of the MCPA exemption provision in *Smith v Globe Life Ins Co*.[19]  In *Smith*, the plaintiff sued the defendant insurance company for breach of contract and violation of the MCPA.   With regard to the MCPA exemption, this Court ruled that *Diamond Mortgage* controlled the disposition of the case and held that "*Diamond Mortgage* instructs that the focus is on whether the transaction at issue, *not the alleged misconduct*, is 'specifically authorized.'"[20]  Therefore, "the defendant in *Diamond Mortgage* was not exempt from the MCPA because the transaction at issue, mortgage writing, was not 'specifically authorized' under the defendant's real estate broker's license."[21]  Analyzing the insurer's activities in *Smith*, this Court concluded that "§ 4(1)(a) generally exempts the sale of credit life insurance from the provisions of the MCPA, because such 'transaction or conduct' is 'specifically authorized under laws administered by a regulatory board or officer acting under statutory authority

---

(…continued)
rather than whether the transaction is authorized, plaintiff and the dissents conspicuously overlook this critical explanation from *Diamond Mortgage*.

[18] *Id.*

[19] 460 Mich 446; 597 NW2d 28 (1999).

[20] *Id.* at 464 (emphasis added).

[21] *Id.*

of this state or the United States.'"[22]  What emerges from *Diamond Mortgage* and *Smith* is that the relevant inquiry "is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited."[23]

The Court of Appeals has applied this test in other regulated industries.  For example, in *Kraft v Detroit Entertainment, LLC*,[24] the Court held that "the general conduct involved in th[at] case–the operation of slot machines–is regulated and was specifically authorized by the [Michigan Gaming Control Board]."  Thus, the plaintiff's MCPA claim regarding slot machines failed because of the § 4(1)(a) exemption.  Similarly, in *Newton v Bank West*,[25] the Court held that the defendant federal savings bank's banking activities were exempt from the MCPA because

---

[22] *Smith, supra* at 465.

[23] *Id*.  Justice Kelly argues that there is a distinction between the tests articulated in *Diamond Mortgage* and *Smith*.  The only difference in the cases is the result.  In *Diamond Mortgage*, the defendants were specifically authorized to engage in real estate transactions, but they had no statutory authorization to engage in mortgage writing.  Because the plaintiff's claims concerned mortgage writing, an unauthorized activity, the MCPA exception did not apply.  In *Smith*, the defendant was licensed to sell insurance, and the case concerned insurance.  Thus, the exception applied.

[24] 261 Mich App 534, 541; 683 NW2d 200 (2004).

[25] 262 Mich App 434; 686 NW2d 491 (2004).

those activities were authorized by the Michigan Savings Bank Act,[26] as well as by numerous federal statutes and regulations.

In the area of residential home building, the Court of Appeals held in *Forton v Laszar*,[27] that the definition of "trade or commerce" in the MCPA could be applied to residential home builders.[28] However, as noted by then-Chief Justice Corrigan in a statement concurring with this Court's order denying the builder's application for leave to appeal, the builder failed to preserve the issue whether § 4(1)(a) exempts residential home building because that conduct or transaction is subject to licensure and regulation under the MOC.[29] Therefore, *Forton* never squarely addressed the exemption. However, in *Hartman & Eichhorn Bldg Co,*

---

[26] MCL 487.3101 *et seq.*

[27] 239 Mich App 711, 714-715; 609 NW2d 850 (2000).

[28] The MCPA defines "trade or commerce" as

> the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity. "Trade or commerce" does not include the purchase or sale of a franchise, but does include pyramid and chain promotions, as "franchise", "pyramid", and "chain promotions" are defined in the franchise investment law, 1974 PA 269, MCL 445.1501 to 445.1546. [MCL 445.902(g).]

[29] 463 Mich 969 (Corrigan, C.J., concurring), citing MCL 339.101 *et seq.*

8

*Inc v Dailey*,[30] the Court mistakenly opined that the *Forton* panel held that the exemption did not apply to building residential homes.[31]  The *Hartman* panel disagreed with the "holding" of *Forton* and declared a conflict, but the full Court of Appeals declined to convene a conflict panel,[32] and the *Hartman* panel denied Hartman's motion for reconsideration.

The *Hartman* panel's treatment of *Forton* was erroneous because *Forton* never addressed the exemption.  As noted, *Forton* merely found that residential home building fell within the MCPA's definition of "trade or commerce." Because the builder did not timely raise the MCPA defense, the *Forton* panel did not have the opportunity to address the exemption.  However, we agree with the *Hartman* panel's independent application of the exemption to residential home building.

Applying the *Smith* test, the relevant inquiry "is whether the general transaction is specifically authorized by law, regardless of whether the specific

---

[30] 266 Mich App 545; 701 NW2d 749 (2005).

[31] Between *Forton* and *Hartman*, in a number of unpublished opinions, the Court of Appeals held that under *Smith*, residential home building is exempt from the MCPA because of the fact that the conduct was regulated under the MOC.  See *Winans v Paul and Marlene, Inc*, unpublished opinion per curiam of the Court of Appeals, issued February 22, 2005 (Docket No. 250123), and *Shinney v Cambridge Homes, Inc*, unpublished opinion per curiam of the Court of Appeals, issued July 8, 2003 (Docket No. 230944).  However, these cases were not binding on the *Hartman* panel.  MCR 7.215(C).

[32] 266 Mich App 801 (2005).

misconduct alleged is prohibited."[33]  This Court has not construed the meaning of "specifically authorized" under the MCPA.  "Specific" means "having a special application, bearing, or reference; explicit or definite."[34]  "Authorize" means "to give authority or formal permission for; sanction."[35]  Thus, the exception requires a general transaction that is "explicitly sanctioned."

In this case, the general conduct at issue is residential home building. Residential home builders are licensed under the MOC[36] and are regulated by the Residential Builders' and Maintenance and Alteration Contractors' Board, which oversees licensing and handles complaints filed against residential builders. Moreover, there is a set of administrative rules promulgated to regulate the

---

[33] *Smith*, *supra* at 465.

[34] *Random House Webster's College Dictionary* (1997).  Justice Kelly defines "authorize" as "to give authority or official power *to*; empower."  *Post* at 14, quoting *Random House Webster's College Dictionary* (2001) (emphasis added).  "Empower" is defined as "1. to give official or legal power or authority to. 2. to endow with an ability; enable."  *Random House Webster's College Dictionary* (1997).  Given the definition of "empower" and the use of the preposition "to," the clear import of this definition is that it applies to the "authorization" of the actor.  The definition we choose focuses on the "authorization" of the action, which is also the focus of MCPA § 4(1)(a), which applies to "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  Contrary to Justice Kelly's assertion, we do not focus on the actor. Defendants' status as residential home builders is relevant only to the extent that such status specifically authorizes them to engage in a particular *transaction*, i.e., residential home building.

[35] *Random House Webster's College Dictionary* (1997).

[36] MCL 339.101 *et seq.*

10

licensing procedure.[37]  Furthermore, the general transaction at issue in this case, contracting to build a residential home, is "specifically authorized" by law.  First, the MOC comprehensively defines a "residential builder" as

> a person engaged in the construction of a residential structure or a combination residential and commercial structure who, *for a fixed sum, price, fee, percentage, valuable consideration, or other compensation*, other than wages for personal labor only, undertakes with another or offers to undertake or purports to have the capacity to undertake with another for the erection, construction, replacement, repair, alteration, or an addition to, subtraction from, improvement, wrecking of, or demolition of, a residential structure or combination residential and commercial structure; a person who manufactures, assembles, constructs, deals in, or distributes a residential or combination residential and commercial structure which is prefabricated, preassembled, precut, packaged, or shell housing; or a person who erects a residential structure or combination residential and commercial structure except for the person's own use and occupancy on the person's property.[38]

A residential home builder, by statutory definition, is one who engages in construction activities "for a fixed sum, price, fee, percentage, valuable consideration, or other compensation . . . ."  Therefore, a residential home builder is "specifically authorized" to contract to build homes.[39]

---

[37] 1999 AC R 338.1511 through R 338.1555.

[38] MCL 339.2401(a) (emphasis added).

[39] Justice Kelly argues that "[n]othing in [the MOC] explicitly gives residential home builders the power to engage in residential home building." *Post* at 15.  However, the statute clearly requires most people to obtain a license before acting as a residential home builder.  A "license" is "formal permission from a governmental or other constituted authority to do something, as to carry on some business or profession."  *Random House Webster's College Dictionary* (1997).

(continued…)

11

Additionally, there are only a limited number of instances where a non-licensed builder may "engage in the business of or act in the capacity of a residential builder."[40]  The clear import of the statutory scheme is that there are only a *few instances* where one can engage in the business of a residential home builder *without having a license*.  Therefore, with limited exceptions, contracting to build a residential home is a transaction "specifically authorized" under the MOC, subject to the administration of the Residential Builders' and Maintenance and Alteration Contractors' Board.[41]

---

(…continued)
Through the licensure requirement, the statute explicitly sanctions, or "specifically authorizes," qualified individuals to engage in residential home building.

Justice Kelly also states that "[a] transaction or conduct that is actually *prohibited* by law cannot be deemed to be specifically *authorized*."  *Post* at 7 (emphasis in original).  In this case, however, the general transaction of residential home building has been specifically authorized.  The prohibitions cited by the dissent address specific misconduct in the course of fulfilling that transaction: MCL 339.2411(2)(d) prohibits "[a] willful departure from or disregard of plans," and MCL 339.2411(2)(m) prohibits "[p]oor workmanship."  Contrary to the dissent, these provisions do not prohibit the transaction of residential home building.  To the contrary, they assume the propriety of such transaction.  Hence, the dissent errs in concluding that the transaction in this case has been "prohibited by law."  *Post* at 7 (emphasis omitted).

[40] MCL 339.2403, listing nine exceptions to the licensure requirement.

[41] The dissents' focus on the plaintiffs' characterization of the conduct is misplaced.  While plaintiffs allege that defendants failed to timely complete construction and made multiple misrepresentations, the fact remains that all of the alleged misconduct occurred during the course of the *authorized* conduct of residential home building.

Thus, the MCPA exemption applies to residential home builders who engage in the type of activities that define a residential home builder, which activities are permitted by the MOC to be performed only by licensed residential home builders. This case is unlike *Diamond Mortgage*, where the defendants engaged in activity, mortgage writing, that their real estate broker license simply did not permit them to do. Forming an agreement to build a home is the essence of a residential home builder's activity that is specifically authorized by law.

CONCLUSION

Applying the *Smith* test, defendants' "general transaction," building a residential home, is "specifically authorized" under the MOC and the relevant regulations. Therefore, that transaction is exempt from the MCPA. We reverse the Oakland Circuit Court order to the contrary, as well as overrule any contrary holding in *Forton* and *Hartman*, and remand for further proceedings consistent with this opinion.

> Robert P. Young, Jr.
> Clifford W. Taylor
> Elizabeth A. Weaver
> Maura D. Corrigan
> Stephen J. Markman

13

S T A T E   O F   M I C H I G A N

SUPREME COURT

ARTHUR Y. LISS and BEVERLY LISS,

      Plaintiffs-Appellees,

v                                  No. 130064

LEWISTON-RICHARDS, INC., and
JASON P. LEWISTON,

      Defendants-Appellants.

_____

CAVANAGH, J. (*dissenting*).

I concur with the result reached by Justice Kelly in her dissent. While I agree with much of Justice Kelly's analysis regarding *Attorney General v Diamond Mortgage Co*, 414 Mich 603; 327 NW2d 805 (1982), and *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999), I do not agree with all the stated rationale in her dissent. I do not believe that the application of *Smith* should be limited to the insurance industry. Instead, I believe that *Smith* should be overruled on the basis of the factors set forth in *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000). As explained in my opinion concurring in part and dissenting in part in *Smith*, *supra* at 479-480, the test adopted in *Smith* is so broad that it precludes many permissible claims under the Michigan Consumer Protection Act, MCL 445.901 *et seq*. Moreover, not only was *Smith* wrongly decided, the *Smith*

decision defies practical workability because it disallows numerous claims that are actually *allowed* under the relevant statutory language.

Further, I do not agree that residential home builders are not specifically authorized to engage in the general conduct of residential home building. As stated in my opinion in *Smith*, a proper inquiry first examines "whether the *specific* transaction or conduct at issue, as opposed to the *general* transaction, is 'specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state . . . .'" *Smith*, *supra* at 476, quoting MCL 445.904(1)(a) (emphasis added). The specific conduct at issue in this case—essentially, not completing work by the agreed-upon time, doing work that did not meet the agreed-upon specifications, and making various misrepresentations—is not conduct that is specifically authorized. Thus, I would affirm the trial court's denial of defendants' motion for summary disposition.

Michael F. Cavanagh

S T A T E  O F  M I C H I G A N

SUPREME COURT

ARTHUR Y. LISS and BEVERLY LISS,

        Plaintiffs-Appellees,

v

No. 130064

LEWISTON-RICHARDS, INC., and JASON
P. LEWISTON,

        Defendants-Appellants.

_____

KELLY, J. (*dissenting*).

Plaintiffs Arthur and Beverly Liss sued defendants Lewiston-Richards, Inc., and Jason Lewiston, asserting a cause of action under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. As the basis of their claim, plaintiffs accused defendants of behavior that is arguably prohibited by the Michigan Occupational Code. MCL 339.101 *et seq.*

A majority of this Court finds that the behavior at issue is exempt from the MCPA because it is specifically authorized by the code. In reaching this result, the majority extends the holding of *Smith v Globe Life Ins Co*[1] to the residential home building industry. Because I believe that the behavior at issue is not exempt

_____

[1] 460 Mich 446; 597 NW2d 28 (1999).

from the MCPA and that the holding of *Smith* should be limited strictly to cases involving the insurance industry, I dissent.

FACTS

Plaintiffs, Arthur and Beverly Liss, purchased a house that was being built by defendant Lewiston-Richards, Inc. Construction was in progress when plaintiffs signed the agreement of sale. It contained provisions regarding the construction of a residential dwelling, Lewiston-Richards's experience and qualifications, and Lewiston-Richards's financing agreements. Lewiston-Richards's principal, defendant Jason Lewiston, signed a personal guaranty in connection with the agreement. Lewiston guaranteed that Lewiston-Richards would perform its obligations under the agreement, including those in the limited warranty. He further agreed that he would assume personal liability if a default occurred that Lewiston-Richards failed to cure.

The home was not completed by the agreed-upon date, and the work was not to plaintiffs' satisfaction. Plaintiffs filed suit claiming that the defendants engaged in unfair trade practices in violation of the MCPA. They alleged that defendants (1) misrepresented the characteristics, uses, and benefits of the residence; (2) misrepresented the standard, quality, and grade of the residence; (3) failed to complete the construction of the residence; and (4) made material misrepresentations or failed to advise of material information with respect to the transaction reflected in the agreement.

2

Defendants moved for summary disposition of the MCPA claim, asserting that the transaction, the building of a residential home, was exempt from the scope of the MCPA. The trial court denied the motion. Defendants then filed an application for leave to appeal in the Court of Appeals and an application for leave to appeal in this Court before a decision by the Court of Appeals. This Court granted defendants' application. 474 Mich 1133 (2006).

THE HOLDINGS IN *SMITH* AND *DIAMOND MORTGAGE* ARE IN CONFLICT

The majority's decision that MCL 445.904(1)(a) exempts licensed residential builders from liability under the MCPA when they are engaged in residential home building is erroneous for two reasons. First, it extends *Smith* to residential home builders. *Smith* should be strictly limited to the insurance industry. Second, even under *Smith*, the conduct at issue is not exempt from the MCPA because the law does not specifically authorize residential home builders to engage in residential home building.

The key part of the MCPA involved here is the exemption provision, MCL 445.904(1)(a). It provides:

> (1) This act does not apply to either of the following:
>
> (a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

The burden of proving the exemption is on the person claiming it. MCL 445.904(4).

3

This Court first interpreted the exemption provision in *Attorney General v Diamond Mortgage Co*, 414 Mich 603; 327 NW2d 805 (1982). *Diamond Mortgage* decided that real estate brokers are not exempt from liability under the MCPA even though their conduct is subject to regulation by the Michigan Department of Licensing and Regulation. *Id.* at 615-617. In holding that real estate brokers are subject to the MCPA, this Court reasoned:

> We agree with the plaintiff that Diamond's real estate broker's license does not exempt it from the Michigan Consumer Protection Act. While the license generally authorizes Diamond to engage in the activities of a real estate broker, it does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct. In so concluding, we disagree that the exemption of § 4(1) becomes meaningless. While defendants are correct in stating that no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." [*Id.* at 617.]

*Diamond Mortgage*'s interpretation of § 4(1)(a) was very narrow and followed the plain meaning of the words of the statute: "[a] transaction or conduct specifically authorized." Under *Diamond Mortgage*, only a transaction or conduct that is specifically authorized by a statute can be exempt from the MCPA.

This Court considered the exemption again in *Smith*. Without explanation, the majority in *Smith* concluded that, in drafting § 4(1)(a), the Legislature intended to exempt "conduct the legality of which is in dispute." *Smith*, 460 Mich at 465. The *Smith* majority went on to create a new test for determining exemptions under

4

§ 4(1)(a). It is whether the "general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith*, 460 Mich at 465. Under this new test, the Court concluded that the entire insurance industry is exempt from the MCPA under § 4(1)(a).

It is apparent to me that the decisions in *Diamond Mortgage* and *Smith* cannot be squared. *Diamond Mortgage* asked whether the transaction or conduct alleged to be in violation of the MCPA is "specifically authorized" by another statute, and it created a narrow exception. *Diamond Mortgage*, 414 Mich at 617. *Smith* asked whether the general transactions of the industry are "specifically authorized," and it created a broad exemption exempting the entire insurance industry. *Smith*, 460 Mich at 465. Because the two interpretations are inconsistent, this Court should determine which was intended by the Legislature.[2]

### *SMITH* SHOULD BE LIMITED TO THE INSURANCE INDUSTRY

When interpreting any statutory provision, a court should begin with an examination of the statutory language. MCL 445.904(1)(a) provides that the

---

[2] The majority claims that *Smith* and *Diamond Mortgage* are consistent because in *Diamond Mortgage* the defendants had "no statutory authorization to engage in mortgage writing." *Ante* at 7 n 23. This is irrelevant because *Diamond Mortgage* did not turn on whether the broker's license of the defendants allowed them to engage in mortgage writing. The decision turned on whether a statute specifically authorized the conduct at issue. The result in *Diamond Mortgage* would have been the same regardless of whether the broker's license allowed the defendants to engage in mortgage writing. The reason is that no statute specifically authorized the conduct that the plaintiffs alleged was in violation of the MCPA.

5

exemption applies to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." By the statute's terms, the exemption applies to "[a] transaction." This statutory language is in the singular. It follows that the proper inquiry is whether the singular transaction or conduct at issue is specifically authorized by law.

However, instead of exempting a singular transaction or conduct, the *Smith* test classifies the transaction in question in broad terms and exempts all the transactions of the entire industry. *Smith*, 460 Mich at 465. On the other hand, *Diamond Mortgage* considers the discrete transaction or conduct at issue and concludes that the exemption applies only if that transaction or conduct is specifically authorized by law. *Diamond Mortgage*, 414 Mich at 617. Accordingly, solely on the basis of the common meaning of the language of the exemption, *Diamond Mortgage* offers the more accurate interpretation.

*Smith* is inconsistent with the language of the statute in another regard. It permits illegal behavior to be exempt from the MCPA. In this case, plaintiffs accuse defendants of behavior that is illegal under the Michigan Occupational Code.[3] Yet under *Smith*, even if plaintiffs' allegations are true, defendants would

---

[3] MCL 339.2411(2) provides, in part:

> A licensee or applicant who commits 1 or more of the following shall be subject to the penalties set forth in article 6:

(continued…)

be exempt from liability under the MCPA. This is an illogical result. The statute provides that there is an exemption for "[a] transaction or conduct specifically authorized under laws . . . ." MCL 445.904(1)(a). A transaction or conduct that is actually *prohibited* by law cannot be deemed to be specifically *authorized*.[4]

By contrast, *Diamond Mortgage*'s narrow reading of the exemption is harmonious with the language of the exemption and also furthers the purpose of the MCPA. In the 1970s, the MCPA was the crown jewel of an aggressive

---

(…continued)

                 \*   \*   \*

     (d) A willful departure from or disregard of plans or specifications in a material respect and prejudicial to another, without consent of the owner or an authorized representative and without the consent of the person entitled to have the particular construction project or operation completed in accordance with the plans and specifications.

                 \*   \*   \*

     (m) Poor workmanship or workmanship not meeting the standards of the custom or trade verified by a building code enforcement official.

Because plaintiffs allege that defendants (1) misrepresented the characteristics, uses, and benefits of the residence; (2) misrepresented the standard, quality, and grade of the residence; (3) failed to complete the construction of the residence; and (4) made material misrepresentations or failed to advise of material information with respect to the transaction reflected in the agreement, defendants' behavior arguably violates these provisions.

[4] Accepting plaintiffs' allegations as true, the majority has decided that defendants are exempt from the MCPA even though they broke the law. I cannot accept that the Legislature intended to exempt illegal conduct from an act that protects consumers from illegal conduct.

7

legislative effort to expand consumers' rights and remedies.[5]  It "was enacted to

provide an enlarged remedy for consumers who are mulcted by deceptive business

practices . . . ." *Dix v American Bankers Life Assurance Co*, 429 Mich 410, 417;

415 NW2d 206 (1987).  The Legislature created this enlarged remedy by making

the MCPA applicable to "trade or commerce"[6] and by defining "trade or

commerce" to include virtually all consumer transactions.[7]

In order to accomplish the goal of "provid[ing] an enlarged remedy for

consumers,"[8] courts should construe the act's exemption narrowly.  *Smith v

Employment Security Comm*, 410 Mich 231, 278; 301 NW2d 285 (1981) (Moody,

J., dissenting).  Though no Michigan court has previously explored the purpose of

---

[5] In addition to the MCPA, the Legislature enacted the landlord-tenants relationships act, MCL 554.601 *et seq*.; the Motor Vehicle Service and Repair Act, MCL 257.1301 *et seq*.; the Truth in Renting Act, MCL 554.631 *et seq*.; and the pricing and advertising act, MCL 445.351 *et seq*.  In fact, during this period, similar "laws of broad applicability [were] enacted in every state and the District of Columbia prohibiting unfair or deceptive acts and practices and unfair competition in the marketplace."  Anno, *Right to private action under state consumer protection act—Equitable relief available*, 115 ALR5th 709, § 2, pp 725-726.

[6] See MCL 445.903(1).

[7] MCL 445.902(1)(g) provides, in part:

"Trade or commerce" means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity.

[8] *Dix*, 429 Mich at 417.

the exemption in § 4(a)(1), courts in numerous other jurisdictions have considered the purpose of similar provisions. These decisions are helpful in understanding the purpose and scope of our exemption.

In *Skinner v Steele*,[9] the Tennessee Court of Appeals was called upon to determine the scope of a similarly worded exemption to the Tennessee consumer protection act (TCPA). *Id.* at 337. The exemption provided:

> The provisions of this chapter shall not apply to: (a) Acts or transactions required or specifically authorized under the laws administered by or rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United States. [TCA § 47-18-111.]

The defendant argued that this provision exempted the entire insurance industry from the TCPA. *Skinner*, 730 SW2d at 337. In deciding that the insurance industry was not exempt, the court noted:

> The purpose of the exemption is to insure that a business is not subjected to a lawsuit under the Act when it does something required by law, or does something that would otherwise be a violation of the Act, but which is allowed under other statutes or regulations. It is intended to avoid conflict between laws, not to exclude from the Act's coverage every activity that is authorized or regulated by another statute or agency. Virtually every activity is regulated to some degree. [*Id.* at 337.][10]

---

[9] 730 SW2d 335 (Tenn App, 1987).

[10] In interpreting similar provisions, the supreme courts of both South Carolina and Colorado have quoted *Skinner* in discussing the purpose of their respective exemptions. *Ward v Dick Dyer & Assoc, Inc*, 304 SC 152, 156; 403 SE2d 310 (1991); *Showpiece Homes Corp v Assurance Co of America*, 38 P3d 47, 56 (Colo, 2001).

9

Similarly, in considering whether regulated industries were exempt from the Ohio consumer sales practices act (CSPA), the Ohio Court of Appeals has stated that, in order to overcome the presumption that the CSPA applies,

> a court must be convinced that "a direct and unavoidable conflict exists between the application of the [CSPA] and application of the other regulatory scheme or schemes. It must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes." [*Elder v Fischer*, 129 Ohio App 3d 209, 219; 717 NE2d 730 (1998), quoting *Lemelledo v Beneficial Mgt Corp of America,* 150 NJ 255, 270; 696 A2d 546 (1997) (interpreting the New Jersey consumer fraud act).][11]

Another source that sheds light on the purpose of the exemption is the recent article written by Assistant Attorney General Edwin Bladen. The MCPA was authored in large part by Mr. Bladen and, in the article *How and why the Consumer Protection Act came to be,* he discusses at length the history and intent of the act.[12] Mr. Bladen states that the MCPA exemptions were intended to be given a limited interpretation. *Id.* at 12. Specifically, he says that the intent was to "look to see, not whether the entity is subject to the act, but whether the method, act or practice alleged to violate the act is indeed one addressed and prohibited by

---

[11] The decisions I have discussed are illustrative of how other courts have interpreted similar exemptions but are by no means an exhaustive review of the laws of sister states. There are many other similar decisions that I have not discussed. See, e.g., *Vogt v Seattle-First Nat'l Bank*, 117 Wash 2d 541; 817 P2d 1364 (1991); *Bober v Glaxo Wellcome PLC*, 246 F3d 934 (CA 7, 2001).

[12] Bladen, *How and why the Consumer Protection Act came to be,* <http://www.michbar.org/consumer/pdfs/HowWhy.pdf> (accessed May 16, 2007).

the act. To the extent *Smith v. Globe Life Insurance . . .* arrived at a different view, it is clearly erroneous . . . ." *Id.*

From these sources, it emerges that the Legislature included the exemption out of concern that the MCPA, because of its breadth, might prohibit a transaction or conduct that another act authorizes. A merchant could be put on the horns of a dilemma if the same transaction were specifically authorized by one statute and prohibited by the MCPA. Section 4(1)(a) was designed to avoid that conflict. The *Diamond Mortgage* holding is in harmony with the purpose of § 4(1) because it applies the exemption only when there is a direct and unavoidable conflict between the MCPA and another law.[13]

Given the language and purpose of the MCPA, I believe that this Court interpreted the exemption correctly in *Diamond Mortgage* and incorrectly in *Smith*. Even so, because I do not think the compelling interests necessary to

---

[13] One example of a direct and unavoidable conflict can be found in the Motor Vehicle Service and Repair Act (MVSRA), MCL 257.1301 *et seq*. The MVSRA establishes an extensive regulatory scheme for motor vehicle repair facilities. The written estimate section of the MVSRA specifically authorizes motor vehicle repair facilities to charge "10 % or $10.00, whichever is lesser" over a written estimate without obtaining "the written or oral consent of the customer . . . ." MCL 257.1332(1). Charging any amount above a written estimate without obtaining the consent of the consumer arguably could violate several subsections of the MCPA. See, e.g., MCL 445.903(1)(n), (s), (bb), and (cc). Because charging this amount in excess of a written estimate is "specifically authorized" under the MVSRA, however, motor vehicle repair facilities that impose the charge are exempt from suit under the MCPA.

11

overrule a prior decision of this Court are present, I do not advocate overruling *Smith*. Instead, I would limit the holding of *Smith* to the insurance industry.

The *Smith* Court itself indicated that its opinion has limited application by explicitly stating that it did not address other consumer transactions not before the Court and warning that "insurance companies are not '[l]ike most businesses.'" *Smith*, 460 Mich at 465-466 n 12 (citation omitted).[14] Aside from matters involving the insurance industry, I would apply the standard articulated in *Diamond Mortgage*. I would hold that the focus of the § 4(1)(a) inquiry is whether the discrete transaction alleged to be in violation of the MCPA is specifically authorized by some other law.

If the test set forth in *Diamond Mortgage* were applied to the facts of this case, the exemption would not apply. Here, plaintiffs allege that defendants

---

[14] There is extraordinary oversight of each credit insurance transaction. The Insurance Code "manifests an intent to regulate the entire insurance and surety business field, and not to leave any portion of it unregulated." 19 Michigan Law & Practice, Insurance, § 1, p 13. Credit insurance transactions are regulated by the Credit Insurance Act, MCL 550.602 through 550.624, and 21 rules in the Administrative Code, containing more than 130 subsections. 1999 AC, R 550.201 through R 550.221. Virtually every document used to arrange and sell credit insurance must be submitted for review by the Commissioner of Insurance before being used to sell insurance to consumers. 1999 AC, R 550.209(2). The commissioner also has authority over all rates and premiums charged in credit insurance transactions. Rates are set by rule; credit life insurance rates must conform to 1999 AC, R 550.211, credit accident and health insurance rates must conform to 1999 AC, R 550.212. This comprehensive regulation of each insurance transaction highlights that, indeed, insurance companies are not like most businesses. And, because insurance transactions require a degree and type of statutory authorization equaled by few, if any, other consumer industries, it is logical to limit *Smith'*s holding to this industry.

12

misrepresented their experience and qualifications and misrepresented the financing of the construction mortgage. Defendants have failed to point to any authority for the proposition that either of these transactions is "specifically authorized" by law.

Plaintiffs also allege that defendants (1) misrepresented the characteristics, uses, and benefits of the residence; (2) misrepresented the standard, quality, and grade of the residence; (3) failed to complete the construction of the residence; and (4) made material misrepresentations or failed to advise of material information with respect to the transaction reflected in the agreement. These transactions, rather than being authorized, are arguably specifically prohibited by law. See MCL 339.2411(2)(d),(m). Accordingly, because defendants were not specifically authorized to perform the discrete transactions at issue, the exemption does not apply.

EVEN UNDER *SMITH,* THE EXEMPTION DOES NOT APPLY HERE BECAUSE THE TRANSACTION OR CONDUCT AT ISSUE IS NOT SPECIFICALLY AUTHORIZED BY LAW

In *Smith*, this Court interpreted the § 4(1)(a) exemption to apply if the "general transaction is specifically authorized by law . . . ." *Smith*, 460 Mich at 465. As I explained earlier, *Smith* should not be extended beyond the facts of that case. However, even under the test in *Smith*, the exemption should not apply here because there is no law specifically authorizing the general transaction or conduct at issue.

13

The determinative issue under the *Smith* test is whether the general conduct or transaction is specifically authorized by law. Accordingly, in order to apply this test, it is first necessary to give meaning to the phrase "specifically authorized." In so doing, it is appropriate to consider dictionary definitions. *Koontz v Ameritech Services*, *Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002). "Specific" is defined as "having a special application, bearing, or reference; explicit or definite." *Random House Webster's College Dictionary* (2001). "Authorize" means "to give authority or official power to; empower."[15] *Id*. Hence, for the general transaction or conduct to be "specifically authorized," there must be a law that explicitly gives the power to perform the general transaction or conduct at issue.

The provisions of the Michigan Occupational Code that apply to residential home builders[16] are devoid of any specific authorizations of transactions or conduct. There are broad definitions of "residential builder" and other positions.[17]

---

[15] Notably, I use *Random House Webster's College Dictionary*'s first definition of the word "authorize" while the majority opinion uses the second definition of the word. The majority claims that it uses the second definition because it focuses on the action and not the actor. This is not true. The majority focuses exclusively on the actor because, under the majority's interpretation, simply being a residential home builder makes defendants exempt from the MCPA.

[16] MCL 339.2401 through 339.2412.

[17] The majority relies on the code's definition of "residential builder" to find specific authorization for the conduct at issue. I take strong exception to this approach. This definition implicitly allows residential home builders to construct

(continued…)

14

MCL 339.2401. There are exemptions from licensure. MCL 339.2403. Minimum licensing qualifications are set forth. MCL 339.2404. Contributions to the Homeowner Construction Lien Recovery Fund[18] are made mandatory. MCL 339.2409.

Perhaps the most significant provision is MCL 339.2411, which lays out in detail the conduct of a licensee that will result in discipline and the procedures applicable to certain complaints. The most that can be said of this provision, however, is that it defines prohibited conduct. Nothing in any of these provisions explicitly gives residential home builders the power to engage in residential home building. Because there is no law that specifically authorizes residential home builders to engage in any activity, let alone residential home building, defendants cannot claim the protection of the exemption.

By erroneously finding that residential home builders are exempt from the MCPA, the majority essentially reads the phrase "specifically authorized" out of the statute. Rather than requiring specific authorization, the majority concludes that the exemption applies as long as the transaction or conduct is not prohibited. Yet, the majority is aware that every word in a statute should be given meaning,

_____

(…continued)
homes, but it does not specifically authorize them to do so. The majority also makes much of the fact that there are only a few instances where one can engage in residential home building without a license. Again, the fact that the law may prohibit nonlicensees from building a home does not amount to specific authorization for residential builders to engage in residential home building.

[18] MCL 570.1201.

15

and the Court should avoid a construction that would render any part surplusage or nugatory. *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001). By ruling as it does, the majority has essentially decided that merely being a licensee in a regulated industry qualifies one for the exemption. Nothing indicates that the Legislature intended such a result.

CONCLUSION

This case addresses the scope of the exemption in MCL 445.904(1)(a). The majority finds that the exemption extends to builders when engaged in residential home building. Essentially, it decides that the exemption applies to any business that has a licensing scheme similar to that used by residential home builders. The result may well be that a large number of Michigan businesses will be able to engage in unfair or deceptive practices without running afoul of the MCPA. For this reason, and for the other reasons set forth in this opinion, I must dissent.

Marilyn Kelly

16