Franklin D. MILLS and Eva
Mills, Plaintiffs,

v.

EQUICREDIT CORPORATION, a for-
eign corporation; U.S. Bank National
Association, Trustee, a foreign corpo-
ration; Fairbanks Capital, Corpora-
tion, a foreign corporation; Loan Ser-
vicing Center and Discount Mortgage
Company d/b/a First Discount Mort-
gage, a Michigan corporation, jointly
and severally, Defendants.

No. 03–70453.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 24, 2003.

904

Rochelle E. Guznack, Dearborn, MI, for plaintiff.

Joseph H. Hickey, Dykema Gossett, Detroit, MI, Thomas M. Schehr, Dykema Gossett, Detroit, MI, David .W. Warren, Joelson, Rosenberg, Marc N. Drasnin, Dixon & MacDonald, Farmington Hills, MI, Steven A. Matta, Garan Lucow, Troy, MI, for defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

BORMAN, District Judge.

Presently before the Court is Defendants'[1] Motion to Dismiss under Fed. R.Civ.P. 12(b)(6) Counts I, II, III, IV, and V in their entirety, and portions of Counts VII and VIII. (Docket Entry 4.)

### I. BACKGROUND

This is a consumer lending case in which Plaintiffs Franklin and Eva Mills allege that Defendants Equicredit Corporation ("Equicredit"), First Discount Mortgage ("First Discount"), U.S. National Bank As-

---

1. The Motion was filed on behalf of Defendants Equicredit, Fairbanks, and Loan Servicing. Defendant First Discount filed a notice of concurrence in this motion to dismiss. U.S. Bank has not been served, and is not a party to this case.

sociation ("U.S. Bank"), Fairbanks Capital Corporation ("Fairbanks"), and Loan Servicing Center ("LSC") engaged in improper lending practices. The Complaint states that Franklin Mills, 79 years old and Eva Mills, 76 years old, who are of African American ethnicity, decided to refinance their home mortgage loan twice, first in 1999 and again in 2000, through mortgage broker First Discount and lender Equicredit.

Defendant First Discount is a mortgage broker, which provides advice and assistance to homeowners seeking credit, by arranging appraisals, obtaining credit information, and preparing loan applications and other documents. (Compl. at ¶ 25.)

In July or August of 1999, First Discount telephonically solicited Plaintiffs Franklin and Eva Mills to refinance their home mortgage loan and consolidate other debt into one monthly mortgage payment. (Compl. at ¶ 49.) Plaintiffs expressed interest in a refinancing arrangement, and First Discount set out to arrange a loan package for the Plaintiffs.

On August 12, 1999, Plaintiffs entered into a loan transaction with Equicredit that was arranged by First Discount. Plaintiffs allege that the terms of the loan arranged by First Discount were substantially different than were previously discussed on the telephone in late July or early August. Plaintiffs allege that they were not given a meaningful opportunity to read the loan documents at the closing because "First Discount's agent or employee kept presenting them with the papers and instructing them to sign." (Compl. at ¶ 57.) The Plaintiffs signed a promissory note for $85,000, which included $51,794.06 to pay off their previous mortgage, $886.90 for City of Detroit real estate taxes, $22,599 in disbursements to various creditors to pay off previously unsecured debts, and $2,922.54 in cash to Plaintiffs. Plaintiffs were also charged a direct broker fee

of $5,500 that was rolled into the loan and an indirect broker fee of $1,700 in the form of a yield spread premium. The indirect broker fee was paid by Equicredit to First Discount for getting Plaintiffs to agree to a high interest rate loan. Other fees paid by Plaintiffs included a $250 appraisal fee, a $270 processing fee, and a $777.50 fee for miscellaneous expenses including recording the deed, transferring the taxes, obtaining title insurance, and obtaining a credit report. The loan was for a 10 year period. Plaintiffs were required to make to pay a monthly payment of $874.32 and a balloon payment of $80,279.76 at the end of the 10 year period.

On January 6, 2000, approximately five months after the first loan closing, Plaintiffs were again solicited telephonically by First Discount to refinance the loan on their home. Plaintiffs were interested in refinancing their home, and applied over the telephone for another home refinancing loan. The second loan closing took place on February 29, 2000. This loan package included a direct broker fee of $6,700 charged to the Plaintiffs and a second indirect broker fee of $2,033 in the form of a yield spread premium paid by Equicredit to First Discount. The indirect broker fee was paid by Equicredit to First Discount because Plaintiffs' agreed to a higher interest rate loan. The Plaintiffs agreed to pay an interest rate of 11.97%. (Compl. at ¶ 65.) The second loan refinancing included a $270 "processing fee" and $759.50 in miscellaneous fees. (Compl. at ¶¶ 67–68.)

Thus, for the two home refinancing loans, Plaintiffs paid $12,200 in direct broker fees, $3,733 in indirect broker fees, and $2,601.99 in other loan related fees and expenses, for a total of $18,534.99 in refinancing expenses.

On January 6, 2003, Plaintiffs Franklin and Eva Mills filed the present lawsuit in

Wayne County, Michigan Circuit Court against Equicredit, First Discount, U.S. Bank, Fairbanks, and LSC, alleging eleven causes of action:

Count I—Federal Real Estate Settlement Procedures Act ("RESPA")—as to Equicredit and First Discount

Count II—Michigan Credit Services Protection Act ("CSPA") and Michigan Consumer Protection Act—Claims Regarding Broker Fee Agreements—as to Equicredit and First Discount[2]

Count III—Federal Equal Credit Opportunity Act ("ECOA")—as to Equicredit

Count IV—Federal Fair Housing Act ("FHA")—as to Equicredit

Count V—Michigan Consumer Protection Act—as to Equicredit

Count VI—Federal Home Ownership and Equity Protection Act ("HOEPA")—as to Equicredit

Count VII—Federal Truth in Lending Act ("TILA")—as to Equicredit and U.S. Bank

Count VIII—Fraud, Michigan Consumer Protection Act, and Breach of Fiduciary Duty—as to Equicredit and First Discount

Count IX—Breach of Contract—as to Equicredit and Fairbanks

Count X—Fraud and Misrepresentation—as to Equicredit, U.S. Bank, and First Discount

Count XI—Intentional Infliction of Emotional Distress—All Defendants

Defendant U.S. Bank is the trustee for several pools of mortgage backed securities, and was the trustee of Plaintiffs' loans and was the legal owner of the Plaintiffs' loans. On April 1, 2002, U.S. Bank sold the Plaintiffs' loans to Defendant Fairbanks. Because U.S. Bank has not been served, it is not a party to this suit.

Plaintiffs claim, inter alia, that the indirect broker fees in the form of yield spread premiums paid by Equicredit to First Discount were "kickbacks" in violation of RESPA. Plaintiff allege that the Defendants charged excessive fees and discriminated against them by targeting them for loans on unfair terms.

On February 3, 2003, Defendants removed this case from Wayne County, Michigan Circuit Court to this Court. On March 13, 2003, Defendants Equicredit, Fairbanks, and LSC filed the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On April 8, 2003, Defendant First Discount filed a "Concurrence" in the motion to dismiss.

Defendants argue that Plaintiffs' claims under RESPA, ECOA, FHA, TILA are barred by the statutes' respective statute of limitations. Defendants point out that each of these federal statutes has either a one or two year statute of limitations that clearly expired prior to the Plaintiffs filing of the present lawsuit. Defendants argue that the above statutes are not subject to equitable tolling because the Defendants did not fraudulently conceal anything. In fact, Defendants point out that the Settlement Statement form, which is a standard form mandated by the Department of Housing and Urban Development, disclosed the indirect broker fees in the forms of yield spread premiums paid by Equicredit to First Discount. Defendants argue that if the Plaintiffs would have exercised due diligence by reading the loan documents, they would have discovered all the terms of the loan agreements.

---

**2.** In their response to Defendants' partial motion to dismiss, Plaintiffs concede that they do not have a claim under CSPA, and therefore they agree to the dismissal of Count II as to Equicredit only.

Lastly, Defendants argue that the Plaintiffs' claim under the Michigan Consumer Protection Act must be dismissed because the Michigan Consumer Protection Act does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state...." Mich. Comp. Laws § 445.904(1). Defendants argue that mortgage lenders are exempt from the Michigan Consumer Protection Act because the transactions at issue, loan agreements, were generally authorized under a Michigan law that was administered by the Commissioner of the Office of Financial and Insurance Services of the Department of Consumer and Industry Services.

Plaintiffs argue that the statutory claims are not barred by the statute of limitations because Defendants' fraudulent concealment equitably tolled the relevant statutes of limitations. Plaintiffs argue that Defendants fraudulently concealed Plaintiffs' causes of action. Plaintiff argue that they would not have discovered the Defendants' fraud by exercising due diligence.

Plaintiffs further argue that their claim under the Michigan Consumer Protection Act should not be dismissed. Plaintiffs argue that *Smith v. Globe Life Insurance Co.*, 460 Mich. 446, 597 N.W.2d 28 (1999) does not apply and that the case is controlled by *Attorney General v. Diamond Mortgage Co.*, 414 Mich. 603, 617, 327 N.W.2d 805 (1982).

## II. ANALYSIS

### A. Standard for Motion to Dismiss

Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion alleges that a complaint has failed to state a claim upon which relief can be granted. In evaluating such a motion, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations in the complaint as true, and determines whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle them to relief. *See Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987).

### B. Statute of Limitations

In their motion to dismiss, Defendants argue that Plaintiffs claims under RESPA, ECOA, FHA, and TILA are barred by the statute of limitations applicable to each statute. Plaintiffs concede that they filed their complaint after each statute of limitations had run, but they argue that the statutes of limitations were tolled because the Defendants fraudulently concealed their statutory violations.

### 1. RESPA

In Count I, Plaintiffs assert that Equicredit violated RESPA, 12 U.S.C. § 2601, *et seq.* In particular, Plaintiffs allege that Equicredit gave a "fee, kickback, or thing of value" to First Discount in violation of 12 U.S.C. § 2607(b) by paying First Discount indirect broker fees in the form of yield spread premiums for the August 12, 1999 and February 29, 2000 loans. (Compl. at ¶¶ 82, 83.) Under Plaintiffs' theory, Equicredit violated RESPA when Plaintiffs signed the loan agreements on August 12, 1999 and February 29, 2000.

RESPA contains a one year statute of limitations. Specifically, 12 U.S.C. § 2614 states in pertinent part:

Any action pursuant to ... [12 U.S.C. § 2607] may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within ... 1 year in the case of a violation of ... [12 U.S.C.

§ 2607] from the date of the occurrence of the violation....

Plaintiffs do not dispute that they did not file their lawsuit within one year "from the date of the occurrence of the violation" of the statute. Rather, Plaintiffs argue that the statute was equitably tolled until they learned that Equicredit paid First Discount a kickback in the form of an indirect broker fee for getting Plaintiffs to agree to a higher interest rate loan.

Defendants make two arguments to rebut Plaintiffs' equitable tolling argument. First, Defendants argue that the RESPA statute of limitations is jurisdictional and may not be equitably tolled. Second, Defendants argue that even if the RESPA statute of limitations may be equitably tolled, it should not be tolled in this case because the indirect broker fees in the form of yield spread premiums were disclosed in the Settlement Statements that Plaintiffs signed on August 12, 1999 and February 29, 2000. (Compl. Exhs. A and B.)

While one circuit court has held that the RESPA statute of limitations is not subject to equitable tolling, *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037 (D.C.Cir.1986), many district courts have held that RESPA is subject to equitable tolling. *Mullinax v. Radian Guaranty Inc.*, 199 F.Supp.2d 311, 328 (M.D.N.C. 2002); *Pedraza v. United Guaranty Corp.*, 114 F.Supp.2d 1347, 1353 (N.D.Ga.2000); *Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787, 793–96 (D.Md.1998); *Moll v. U.S. Life Title Ins. Co. of N.Y.*, 700 F.Supp. 1284, 1286–89 (S.D.N.Y.1988). Although the Sixth Circuit has not addressed this issue, the Sixth Circuit has held that a similarly worded statute is subject to equitable tolling. *See Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir.1984) (holding that the Truth in Lending Act is subject to equitable tolling).

■ The Court need not decide whether RESPA is subject to equitable tolling because even if RESPA is subject to equitable tolling, Plaintiffs' RESPA claim does not meet the equitable tolling standard.

■ Equitable tolling applies to a statute of limitations period when inequitable circumstances prevent a plaintiff from suing before the statutory period runs. In cases of fraudulent concealment, the statute of limitations can be tolled when the plaintiff demonstrates that: "(1) the defendant took affirmative steps to conceal the plaintiff's cause of action; and (2) the plaintiff could not have discovered the cause of action despite exercising due diligence." *Jarrett v. Kassel*, 972 F.2d 1415, 1423 (6th Cir.1992).

Plaintiffs argue that Equicredit paid First Discount a kickback in violation RESPA in the form of a yield spread premium on both the August 12, 1999 and February 29, 2000 refinancing loans. The Court finds that the yield spread premiums were specifically disclosed in the HUD Settlement Statements that Plaintiffs signed upon closing on the loans. HUD Settlement Statements are given to borrowers at a loan closing to inform the borrowers of the fees that they are paying in the loan transaction. For example, the Settlement Statement for the February 29, 2000 loan states: "Yield Spread Prem[ium] paid to 1st Discount Mortgage $2,033." (Compl.Exh. B.) Thus, Defendants did not take affirmative steps to conceal the yield spread premium, but rather specifically disclosed it to the Plaintiffs. Plaintiffs would have discovered this indirect fee by exercising due diligence in reading the Settlement Statement. All other provisions of the loans were also disclosed in the loan documents that the Plaintiffs signed. Therefore, there was no affirmative misrepresentation which prevented Plaintiffs from discovering their RESPA

cause of action, and accordingly the doctrine of equitable tolling is inapplicable.

### 2. ECOA

In Count III, Plaintiffs allege that Equicredit violated the Equal Credit Opportunity Act, 15 U.S.C. § 1601, *et seq.* by refusing to make small loans, by failing to provide proper notice of counteroffers, and by its insistence on refinancing a homeowner's prior mortgage. Plaintiffs allege that Equicredit's lending practices have a disparate impact on African–American homeowners because Equicredit loans "disproportionately to homeowners in predominately African–American and Hispanic neighborhoods, compared to other lenders...." (Compl. at ¶ 93.)

ECOA has a two year statute of limitations period. Specifically, 15 U.S.C. § 1691e(f) states: "No such action shall be brought later than two years from the date of the occurrence of the violation...." The Sixth Circuit has held that in determining whether the statute of limitations is met, "[t]he statute's focus is upon the time of the discriminatory actions, not at the time at which the consequences of the action become painful." *Mays v. Buckeye Rural Elec. Coop., Inc.,* 277 F.3d 873, 879 (6th Cir.2002). Any violation of the statute occurred on the dates that the Plaintiffs signed the loan agreements.

Plaintiffs argue that the statute of limitations should be equitably tolled until they learned the actual terms of the loan. The Court rejects Plaintiffs' argument because all the terms of the loans were disclosed in the loan documents that Plaintiffs signed on August 12, 1999 and February 29, 2000. Plaintiffs did not file this lawsuit until January 6, 2003, over one year after the statute of limitations had run. Again, any terms of the loans that could be deemed to be unfair or unaffordable were disclosed by Defendants in the loan agreements and documents that Plaintiffs

signed on August 12, 1999 and February 29, 2000. Thus, there was no misrepresentation that could be the basis for tolling the statute of limitations. By exercising due diligence, Plaintiffs could have discovered the terms of the loans by reading the loan documents.

### 3. FHA

In Count IV, Plaintiffs assert that Equicredit has discriminated against them by "targeting them for loans on unfair terms," and by "making unaffordable loans that create an undue risk of foreclosure." Plaintiffs allege that Defendants unfairly target African American and Hispanic borrowers. Plaintiffs do not provide any evidence, however, to support this allegation.

The FHA provides a two year statute of limitations.

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice....

42 U.S.C. § 3613(a)(1)(A). Again, any terms of the loans that could be deemed to be unfair or unaffordable were disclosed by Defendants in the loan agreements and documents that Plaintiffs signed on August 12, 1999 and February 29, 2000. Thus, there was no misrepresentation that could be the basis for tolling the statute of limitations. By exercising due diligence, Plaintiffs could have discovered the terms of the loans by reading the loan documents.

### 4. TILA

In Count VII, Plaintiffs allege a claim under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1635(a) and 1640(a). TILA requires that a lender provide a form to the borrower that notifies the borrow of his right to rescind the loan

within three days after entering into the loan agreement. Plaintiffs argue that the wrong form was used. 15 U.S.C. § 1635(a). Plaintiffs also argue that instead of providing them with four copies each of the form as mandated by the statute, Defendants only provided them with two copies each. Last, Plaintiffs argue that they were supposed to sign the reverse side of the form three days after the signing the loans agreements, but that they mistakenly signed the forms on the day of the closing.

TILA provides a one year statute of limitations period for claims seeking damages.

> Any action under this section may brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this title in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law....

15 U.S.C. § 1640(e).

It is undisputed that Plaintiffs signed forms titled "Notice of Right to Cancel," which notified Plaintiffs that had three days to cancel their loan agreements with the Defendants. (Attached to Compl.) Even if the form signed by the Plaintiffs was technically the wrong form, the form did inform the Plaintiffs of their right to cancel the agreements within the three day period. Since the Defendants notified the Plaintiffs of their right to cancel the loan agreements, Defendants did not take any steps to affirmatively conceal Plaintiffs' TILA cause of action. Therefore, there is no basis for equitably tolling the statute of limitations.

## C. Michigan Consumer Protection Act

In Counts II, V, and VIII, Plaintiffs allege claims under the Michigan Consumer Protection Act related to the loan transactions of August 12, 1999 and February 29, 2000. The Michigan Consumer Protection Act provides that it does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state...." Mich. Comp. Laws § 445.904(1). At the time of making the loans to the Plaintiffs, Defendants point out that Equicredit was a licensed mortgage lender under a Michigan law that was regulated by the Commissioner of the Office of Financial and Insurance Services of the Department of Consumer and Industry Services under Michigan Compiled Law § 445.1661(a). Defendants argue that the loan transactions are not subject to the Michigan Consumer Protection Act because Defendants were specifically authorized under Michigan law to make loans.

In *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465, 597 N.W.2d 28 (1999), the Michigan Supreme Court limited its earlier decision in *Attorney General v. Diamond Mortgage Co.*, 414 Mich. 603, 617, 327 N.W.2d 805 (1982), and held that the Michigan Consumer Protection Act does not apply where "the general transaction is specifically authorized by law, regardless of whether the specific misconduct is prohibited." In this case, the general transactions at issue are the loan transactions of August 12, 1999 and February 29, 2000. Because these loan transactions were generally authorized under laws administered by Commissioner of the Office of Financial Services and Insurance, the Court holds that the subject transactions were exempt from the Michigan Consumer Protection Act.

## III.  CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss. Counts I, III, IV, and VII are dismissed in their entirety because they are barred by statute of limitations.  Plaintiff's claims under the Michigan Consumer Protection Act in Counts II, V, and VIII are dismissed because the general loan transactions at issue were authorized under laws administered by the Commissioner of the Office of Financial Services and Insurance. Per stipulation, Plaintiff's claim under the Michigan Credit Service Protection Act in Count II is dismissed as to Equicredit.

The following counts remain pending:

Count VI (Home Ownership and Equity Protection Act—15 U.S.C. §§ 1602 and 1939) as to Equicredit

Count IX (Breach of Contract) as to Equicredit and Fairbanks

Count X (Fraud and Misrepresentation) as to Equicredit and First Discount, and

Count XI (Intentional Infliction of Emotional Distress) Equicredit, First Discount, Fairbanks, and LSC

**SO ORDERED.**