OPINION
{¶ 1} Appellant, Carol A. Villio, appeals the judgment entered by the Trumbull County Court of Common Pleas. The trial court granted a motion for summary judgment filed by appellee, NovaStar Mortgage, Inc. ("NovaStar").
 {¶ 2} Marjorie E. Akins is Villio's mother. Prior to May 18, 2005, Akins owned the residential property located at 1907 Parkwood Drive ("Parkwood Drive property") in *Page 2 
Warren, Ohio. On May 18, 2005, Akins conveyed the property to herself and Villio creating a survivorship tenancy. At that time, there were two prior mortgages on the Parkwood Drive property.
 {¶ 3} Also on May 18, 2005, Akins and Villio entered into a mortgage loan agreement with NovaStar. Pursuant to the mortgage agreement, NovaStar was granted a priority lien on the Parkwood Drive property.[1] The amount of the loan was $80,750.
 {¶ 4} On May 18, 2005, Villio approved a "settlement statement." This document instructed the title agency how to distribute the proceeds from the loan. According to Villio's affidavit, on May 19, 2005, a second "settlement statement" was approved.[2] This second settlement statement revised the distribution of the loan proceeds.
 {¶ 5} On May 18, 2005, NovaStar provided Villio and Akins a notice of right to rescind the loan agreement. This document notified Villio and Akins of their right to rescind the loan agreement until midnight on May 21, 2005. A new notice of right of rescission was not given to Akins and Villio when the distribution of the proceeds was revised by the second settlement statement.
 {¶ 6} Pursuant to the mortgage note, Akins and Villio were to make monthly payments of $655.55. Akins and Villio did not make the monthly payment due October 1, 2005. After collection efforts by NovaStar to allow Villio to make her obligations *Page 3 
under the note current were unsuccessful, NovaStar invoked the acceleration clause in the loan.
 {¶ 7} In March 2006, NovaStar filed a complaint for foreclosure of the Parkwood Drive property.
 {¶ 8} In May 2006, Villio sent a notice of rescission to NovaStar. This document indicated that Villio "elected to rescind" the mortgage loan transaction.
 {¶ 9} In July 2006, with leave of court, Villio filed an answer to the complaint.[3] In that same pleading, she filed counterclaims against NovaStar and a motion to dismiss the foreclosure complaint.
 {¶ 10} NovaStar and Villio filed motions for summary judgment. In addition, both Villio and NovaStar filed briefs in opposition to the other party's motion for summary judgment. NovaStar attached several documents to its motion for summary judgment, including: an affidavit from one of its employees, Matthew Montes; a copy of the note; a copy of the mortgage; a copy of the assignment from MERS to NovaStar; a copy of the correspondence sent to Akins and Villio indicating NovaStar's intent to foreclose on the mortgage; a copy of the notice of right to cancel; and a copy of the rescission notice that Villio sent to NovaStar. Villio also attached several documents to her motion for summary judgment, including: her affidavit; a copy of the note; a copy of the mortgage; a copy of the first and second settlement statements; a copy of the notice of right to cancel; a copy of the rescission notice she sent to NovaStar; a copy of Akins' responses to Villio's request for admissions; and a copy of a $50 check written by Akins to the title agency. *Page 4 
 {¶ 11} On September 14, 2007, the trial court issued a judgment entry, which, among other matters, (1) granted NovaStar's motion for summary judgment, (2) denied Villio's motion for summary judgment, and (3) denied Villio's motion to dismiss. The trial court included language in this judgment entry, pursuant to Civ. R. 54(B), that there was no just reason for delay. Villio timely appealed the trial court's September 14, 2007 judgment entry to this court, and that appeal was assigned case No. 2007-T-0111.
 {¶ 12} On October 22, 2007, the trial court issued an "agreed judgment entry and decree of foreclosure."[4] Therein, the trial court entered judgment in favor of NovaStar and against Villio "in the amount of $80,619.43, plus interest thereon at the rate of 9.10% per annum from September 1, 2005, plus late charges, costs and advances, all as provided in the Note and Mortgage." Villio has also appealed the trial court's October 22, 2007 judgment entry to this court, and that appeal was assigned case No. 2007-T-0117. On appeal, this court has consolidated case No. 2007-T-0111 and case No. 2007-T-0117 for all purposes.
 {¶ 13} Villio raises four assignments of error. Her first and third assignments of error are:
 {¶ 14} "[1.] The court below erred in granting the motion for summary judgment [filed] by Appellee NovaStar upon the issue of the enforceability of the Promissory Note and the Mortgage. *Page 5 
 {¶ 15} "[3.] The court below erred in denying the motion for summary judgment by Appellant Villio upon the issue of the enforceability of the Promissory Note and the Mortgage."
 {¶ 16} Due to the similar nature of these assigned errors, they will be addressed in a consolidated analysis.
 {¶ 17} Pursuant to Civ. R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Civ. R. 56(C). The standard of review for the granting of a motion for summary judgment is de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
 {¶ 18} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In Dresher v.Burt, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in *Page 6 
Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Misteff v. Wheeler (1988), 38 Ohio St.3d 112.
 {¶ 19} "* * *
 {¶ 20} "The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' [Dresher v. Burt, 75 Ohio St.3d at 276.]" Welch v. Ziccarelli, 11th Dist. No. 2006-L-229,2007-Ohio-4374, at ¶ 40-42. (Emphasis sic.)
 {¶ 21} Villio does not challenge the trial court's finding that she was in default on the mortgage note. Instead, she argues that the trial court erred by finding that her notice of rescission was not valid. Thus, we will focus our analysis on this issue.
 {¶ 22} Since this transaction conveyed a security interest in a residential property, which was the borrowers' primary residence, it was subject to the provisions of the Federal Truth in Lending Act ("TILA"). See Section 1601, Title 15, U.S. Code, et *Page 7 
seq. Specifically relevant to the instant matter is Section 1635, Title 15, U.S. Code, which provides, in pertinent part:
 {¶ 23} "(a) Disclosure of obligor's right to rescind. Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section."
 {¶ 24} A lender's failure to give notice as required by TILA will extend the time period for a borrower's right to rescind "up to three years." ContiMortgage Corp. v. Delawder (July 30, 2001), 4th Dist. No. 00CA28, 2001 Ohio App. LEXIS 3410, at *7. (Citations omitted.)
 {¶ 25} The trial court noted that Section 1635, Title 15, U.S. Code permits the borrower three days to rescind the agreement from the date the rescission materials are *Page 8 
provided to the borrower or the date the transaction is consummated. In this matter, the trial court concluded that both of these events occurred on May 18, 2005, thereby providing Villio until midnight on May 21, 2005 to rescind the agreement.
 {¶ 26} It is undisputed that NovaStar properly provided Villio with notice of her right to rescind the transaction on May 18, 2005. Villio argues that the second draft of the settlement statement amounted to a novation of the agreement and, as a result, she was entitled to a new notice of right to rescind. We disagree.
 {¶ 27} "A novation is generally understood as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation * * *." Huntington Natl.Bank v. Martin (Mar. 12, 1999), 11th Dist. No. 98-L-082, 1999 Ohio App. LEXIS 936, at *6, citing 18 Ohio Jurisprudence 3d (1997) 204-205, Contracts, Section 283.
 {¶ 28} "`In order to effect a valid novation, all parties to the original contract must clearly and definitely intend the second agreement to be a novation and intend to completely disregard the original contract obligation.'" Kruppa v. All Souls Cemetery of theDiocese of Youngstown (Feb. 22, 2002), 11th Dist. No. 2001-T-0029, 2002 Ohio App. LEXIS 773, at *14, quoting Moneywatch Cos. v. Wilbers (1995),106 Ohio App.3d 122, 125.
 {¶ 29} The settlement statement was drafted on a form provided by the United States Department of Housing and Urban Development ("HUD"). See, e.g., Podany v. Real Estate Mtge. Corp. Escrow Co. (Dec. 16, 1999), 8th Dist. No. 75307, 1999 Ohio App. LEXIS 6083, *4, fn. 3. "A HUD-1 Settlement Statement is a form that lenders must provide to borrowers to identify all settlement (or closing) costs on a federally related *Page 9 
mortgage loan." Schuetz v. Banc One Mtge. Corp. (C.A.9, 2002),292 F.3d 1004, 1008, fn. 2, citing Section 2603, Title 12, U.S. Code. See, also,Vega v. First Fed. S. L. Assoc. of Detroit (C.A.6, 1980),622 F.2d 918, 923. The HUD settlement Statement must also "inform the borrowers of the fees that they are paying in the loan transaction." Mills v.Equicredit Corp. (E.D.Mich. 2003), 294 F.Supp.2d 903, 908.
 {¶ 30} We note the settlement statement was an agreement with the title agency regarding how to distribute the proceeds of the loan. The revised settlement statement did not change the fees charged; instead, it merely changed the designated recipients of some of the proceeds. Specifically, the payoff amounts of two accounts at First Place Bank were collectively reduced by $56.76 in the revised settlement statement. Also, an "additional disbursement exhibit" was attached to both of the settlement statements. The total distribution amount increased by $3,380 in the revised settlement statement. In the initial settlement statement, Villio and Akins were to receive a cash distribution of $3,089.35. However, in the revised settlement statement, they owed $50. The revised settlement statement shows a "broker credit" in the amount of $183.89. Accordingly, when the amount Villio and Akins were to receive in the initial settlement statement ($3,089.35) is added to the amount they owed in the revised settlement statement ($50), the broker credit ($183.89), and the difference between the payoff amount for the First Place accounts ($56.76), the total comes to $3,380 — the exact amount of the increase of the additional distributions. In sum, Villio and Akins decided they wanted more money of the loan proceeds to go toward paying off existing debt. It appears Novastar made efforts to accommodate Villio and Akins' wishes. *Page 10 
 {¶ 31} We emphasize that none of the terms of the underlying note or mortgage changed as a result of the revised settlement statement. Specifically, the same amount of money was borrowed from NovaStar, and the same repayment conditions remained in effect.
 {¶ 32} Moreover, while the settlement statement was related to this transaction, it was a separate contract with its own terms. The settlement statement itself did not convey any interest in real property; therefore, it was not necessary to comply with TILA by issuing a new notice of right to rescind due to the revisions of the settlement statement.
 {¶ 33} Finally, even if there were technical mistakes in NovaStar's compliance with TILA, we do not believe those mistakes permit Villio to rescind the mortgage nearly one year after she executed the documents. NovaStar cites the following language from the Fourth Appellate District:
 {¶ 34} "In sum, we agree with the trial court's conclusion that any TILA mistakes in the instant case constitute technical (if not hyper-technical) mistakes and do not violate the spirit of the law. We therefore find no error in the court's judgment that appellant could not rescind the mortgage loan. Our holding is supported by several other factors as well. First, whatever mistakes that may have occurred in the loan closing, neither appellant nor her mother suffered any apparent prejudice. We find no evidence to show that appellant was damaged or that appellant wanted to rescind the loan. Only after appellant was in default and foreclosure proceedings had begun (approximately eighteen months after the loan closing) did appellant express her desire *Page 11 
to rescind the loan." ContiMortgage Corp. v. Delawder, 2001 Ohio App. LEXIS 3410, at *16.
 {¶ 35} In this matter, Villio did not seek to rescind the loan agreement within three days of May 18th or 19th of 2005. Instead, she provided NovaStar with her notice of rescission in May 2006. This was nearly one year after the mortgage loan was executed and after NovaStar had initiated foreclosure proceedings.
 {¶ 36} The trial court did not err by granting NovaStar's motion for summary judgment and denying Villio's motion for summary judgment.
 {¶ 37} Villio's first and third assignments of error are without merit.
 {¶ 38} Villio's second assignment of error is:
 {¶ 39} "The court below erred in granting judgment on September 14, 2007 in favor of Appellee NovaStar and against Appellant Villio for money judgment on the Promissory Note and Mortgage that is so vague and uncertain that Appellant cannot ascertain the amount of the judgment."
 {¶ 40} In its September 14, 2007 judgment entry, the trial court granted NovaStar's motion for summary judgment. The trial court included language in the judgment entry that "[t]his is a final and appealable order and there is no just reason for delay." The inclusion of this language rendered the legal issues contained in the judgment entry immediately appealable, even though other issues remained pending before the trial court. See Civ. R. 54(B). Further, we note the trial court included the following language in its September 14, 2007 judgment entry: "Plaintiff NovaStar shall submit a proposed entry in foreclosure upon receipt of this Judgment Entry." *Page 12 
 {¶ 41} The language of the trial court's September 14, 2007 judgment entry clearly indicates the trial court's intention that the judgment entry was not to serve as a final judgment entry outlining all of Villio's obligations. Instead, the language of the judgment entry provided Villio a means to immediately appeal the legal issues-addressed in our analysis of her first and third assignments of error — to this court.
 {¶ 42} Since the trial court's September 14, 2007 judgment entry was not intended to be the final judgment of the case, the judgment was not vague or uncertain due to its failure to detail the parties' rights and obligations.
 {¶ 43} Villio's second assignment of error is without merit.
 {¶ 44} Villio's fourth assignment of error is:
 {¶ 45} "The court below erred in entering judgment on October 22, 2007 in favor of Appellee NovaStar and against Appellant Villio for money judgment on the Promissory Note and Mortgage that is so vague and uncertain that Appellant cannot ascertain the amount of the judgment or amount that she must pay to exercise her right of redemption with reasonable certainty."
 {¶ 46} The Fourth District has held:
 {¶ 47} "`"[T]he trial court must * * * enter its own independent judgment disposing of the matters at issue between the parties, such that the parties need not resort to any other document to ascertain the extent to which their rights and obligations have been determined. In other words, the judgment entry must be worded in such a manner that the parties can readily determine what is necessary to comply with the order of the court."'" Burns v. Morgan, 165 Ohio App.3d 694, 2006-Ohio-1213, at ¶ 10, quoting Yahraus v. Circleville (Dec. 15, 2000), 4th Dist. No. 00CA04, 2000 Ohio App. LEXIS *Page 13 
6315, at *9, quoting Lavelle v. Cox (Mar. 15, 1991), 11th Dist. No. 90-T-4396, 1991 Ohio App. LEXIS 1063, at *7 (Ford, J., concurring).
 {¶ 48} In this matter, the trial court's October 22, 2007 judgment entry entered judgment "in the amount of $80,619.43, plus interest thereon at the rate of 9.10% per annum from September 1, 2005, plus late charges, costs and advances, all as provided in the Note and Mortgage." Further, the court stated that Villio owed NovaStar "the sums found to be owing to it as set forth above, together with interest due thereon, and the advances made on behalf of the Property for real estate taxes, insurance premiums and property protection and maintenance by [NovaStar.]"
 {¶ 49} Regarding the interest and late fees, these matters are set forth in the note. While the better practice would be for the trial court to specify the exact interest rate and late charges in the judgment entry itself, the fact that these terms are unambiguously stated in the note does not render the judgment entry deficient in regard to these items. This is because it is possible for Villio to ascertain the amount of the interest and late fees by referencing the note and performing her own computations.
 {¶ 50} The judgment entry also provides that Villio pay to NovaStar for its advance on real estate taxes and insurance premiums. The judgment entry does not provide a cost of these purported advancements. Further, the record does not contain any evidence that NovaStar made any advancements for real estate taxes or insurance premiums.
 {¶ 51} We are also troubled by the trial court's assessment of "costs." In Paragraph 7(E), the note is entitled "Payment of Note Holder's Costs and Expenses" and provides: *Page 14 
 {¶ 52} "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees."
 {¶ 53} There is nothing in the record to demonstrate NovaStar's costs and expenses or whether those costs and expenses were reasonable.
 {¶ 54} In addition, the trial court's judgment entry requires Villio to reimburse NovaStar for funds it advanced for "property protection." Paragraph 9 of the mortgage provides, in part:
 {¶ 55} "[If certain preconditions occur,] Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the property."
 {¶ 56} Again, there is nothing in the record to indicate what, if any, funds NovaStar expended relating to property protection. Further, if NovaStar did advance such funds, there is nothing in the record to show that those expenditures were "reasonable" and "appropriate."
 {¶ 57} The trial court's October 22, 2007 judgment entry is vague and uncertain, because it does not permit Villio to determine her obligations as they existed at the time of the decree with reasonable certainty. Accordingly, the trial court's October 22, 2007 judgment entry is "void for uncertainty." Short v. Short, 6th Dist. No. F-02-005, 2002-Ohio-2290, at ¶ 10. (Citations omitted.) Further, since an appeal cannot arise from a *Page 15 
void judgment, the trial court's October 22, 2007 judgment entry is not a final, appealable order. Id.
 {¶ 58} We recognize, as NovaStar contends, there will be costs incurred by the lender that will not be known until the time of confirmation of sale. However, to the extent specific costs of the lender have been incurred and are known at the time of the decree of foreclosure, those specific costs should be included in the decree. Otherwise, the debtor is being asked to review and approve a judgment without knowing the amount. This could result in an improperly-motivated lender submitting exorbitant statements for lawn care, insurance, maintenance, etc. Foreclosure proceedings can be time-and resource-intensive matters. However, at the time the final judgment is entered, the mortgage company has most likely expended the majority of the costs associated with the foreclosure case. Thus, the mortgage company should submit an amount certain that is owed by the borrower for the principal, interest, and fees at the time of the final judgment. If the specific costs are submitted, the borrower has an opportunity to object before it becomes a judgment. Further, this "owed to date" approach permits the trial court to review the charges and make sure that they are accurate and reasonable. This method would continue to protect the lender's interests, because the final decree could provide for an allowance of any additional costs incurred between the date of the decree and the date of the confirmation of sale. The confirmation of sale would then reflect reimbursement of those additional costs.
 {¶ 59} Villio's fourth assignment of error has merit to the extent indicated.
 {¶ 60} The judgment of the trial court in case No. 2007-T-0111 is affirmed. The appeal in case No. 2007-T-0117 is dismissed due to lack of a final, appealable order. *Page 16 
 {¶ 61} As a result of our decision, this matter will return to the trial court's docket. A review of the trial court's docket indicates that the confirmation of sale has not occurred. Thus, the trial court is to issue a new judgment and decree of foreclosure, to replace the October 22, 2007 judgment entry, which is void. Consistent with this opinion, the new judgment entry and decree shall adequately and specifically state the rights and obligations of the parties. Thereafter, this matter shall proceed according to law.
CYNTHIA WESTCOTT RICE, J., MARY JANE TRAPP, J., concur.
[1] The mortgage document designated Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as NovaStar's nominee, as the mortgagee. However, MERS later assigned its interest in the mortgage to NovaStar.
[2] This second settlement statement is also dated May 18, 2005. However, since this matter is at the summary judgment stage, we will accept Villio's assertion that this document was executed on May 19, 2005.
[3] Akins was also named as a defendant. However, Akins separately defended the matter at the trial court level and is not a party on appeal.
[4] While this judgment entry was captioned as an agreed judgment entry, Villio's counsel did not sign the judgment entry and specifically responded to the proposed judgment entry with a memo to NovaStar's counsel, which stated, in part, "the judgment entry you propose is wholly inappropriate and you do not have permission to sign myconsent." (Emphasis sic.) However, since this judgment entry was signed by the trial court, we will proceed as though it is a valid entry. *Page 1